UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

_____
                                        )
WERUVA INTERNATIONAL, INC.,             )
                                        )
           Plaintiff,                   )
                                        )
           v.                           )   Civil Action No. 1:12-CV-10447-WGY
                                        )
PETS GLOBAL, INC. d/b/a Fussie          )
Cat and Premium Fussie Cat,             )
                                        )
           Defendant.                   )
_____ )

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO STRIKE AND/OR DISREGARD CERTAIN AFFIDAVITS AND
<u>DOCUMENTS PROFERRED BY PLAINTIFF</u>**

Defendant Pets Global, Inc. d/b/a Fussie Cat and Premium Fussie Cat ("<u>Pets</u> <u>Global</u>"), by its attorneys, Pierce Atwood LLP, respectfully submits this memorandum of law in support of its motion to strike and/or disregard certain affidavits and documents proffered by Plaintiff Weruva International, Inc. ("<u>Weruva</u>") in support of its motion for preliminary injunction.

**<u>INTRODUCTION</u>**

Both Weruva and Pets Global manufacture – in exactly the same facility in Thailand – and distribute a competing line of "human style" cat food. Weruva, based in Natick, Massachusetts, commenced its operations in 2006. Pets Global entered this specialty market recently in late 2010. The only material difference between the parties' cat food products is that a typical can of Weruva's product sells at retail for $1.29, whereas Pets Global's product is priced at 89¢, a full 30% less than Weruva's product. Since its entry into the U.S. market, Pets Global has engaged in a process of voluntarily improving its labels and marketing materials, in

{W3121615.2}

part, to ensure compliance with the complicated web of federal and state regulations governing pet food. Its current labels and marketing materials are compliant with federal and state law.

Notwithstanding this fact, Weruva filed a Complaint against Pets Global on March 9, 2012 alleging that Pets Global is engaging in an unlawful marketing scheme. (Document No. 1.) Weruva's Complaint is based on a series of alleged misrepresentations and allegedly technical violations found in prior iterations of Pets Global's labels and marketing materials.

Weruva filed a motion for preliminary injunction ("Weruva Motion") on May 11, 2012, seeking, in part, a recall of all allegedly offending Pets Global products. (Document No. 3.) This motion is currently pending before this Court, Pets Global's opposition is due June 15, 2012, and the motion is set for hearing on June 18, 2012. (Document No. 13.) After reviewing the affidavits and exhibits supporting the Weruva Motion and supporting memorandum (Document No. 12; "Weruva Memo"), Pets Global felt compelled to seek certain interim relief prior to filing its opposition.

In support of the Weruva Motion, Weruva submits affidavits and exhibits littered with inadmissible hearsay, often from unnamed declarants, including unauthenticated documents and photographs of dubious provenances, and containing wholly irrelevant materials. In addition, much of the "evidence" submitted by Weruva consist of statements that are wholly unreliable and lack the basic indicia of fairness or reliability, assertions that are not based on personal knowledge, documents that contain inappropriate redactions clearly designed to prevent or hinder an investigation into their source or origin, or consist of purported "expert" opinion that don't even come close to satisfying the requirements of Fed. R. Evid. 702. The affidavits and exhibits supporting the Weruva Motion for preliminary injunction are a shockingly cavalier attempt to pervert the rules of evidence and place inadmissible and unreliable "evidence" before

2

this Court. Weruva asks this Court to entirely neglect the rules of evidence. This Court should not oblige. Given the extraordinary nature of the remedy Weruva seeks, and given that this suit involves direct competitors and the risk of potentially anti-competitive litigation, the Court should be particularly vigilant in policing unreliable evidence.

**ARGUMENT**

Pets Global should prevail on its motion for two independently sufficient reasons: first, the challenged affidavits and exhibits are violative of the rules of evidence and contain no indicia of reliability warranting consideration; and second, given the drastic scope of injunctive relief Weruva seeks against its primary competitor – including, for example, a recall of allegedly offending products – the Court's consideration of the infirm affidavits and exhibits would result in fundamental unfairness to Pets Global.

**I.      Governing Law**

At the risk of bringing coals to Newcastle, we recite the fundamental principle that a preliminary injunction is an "extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). The purpose of a preliminary injunction is to preserve the status quo until the trial can be held. *See CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 620 (1st Cir. 1995) ("[t]he purpose of a preliminary injunction is to preserve the status quo, [by] freezing an existing situation . . . ."); 11A Wright & Miller, *Federal Practice & Procedure* § 2949 (2d ed.) ("Wright & Miller") ("a preliminary injunction only has the effect of maintaining the positions of the parties until the trial can be held."). When, as here, the party moving for a preliminary injunction seeks mandatory action by the non-moving party, the burden is elevated and the

injunction "should be granted only in those circumstances when the exigencies of the situation demand such relief." *Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency*, 649 F.2d 71, 76 n.7 (1st Cir. 1981).

Due to the exigent nature of the proceeding, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). In practice, "[a]ffidavits are appropriate on a preliminary injunction motion and typically will be offered by both parties." Wright & Miller at § 2949. While "[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings," *Asseo v. Pan Am. Grain Co., Inc.*, 805 F.2d 23, 26 (1st Cir. 1986), this Court must still weigh "all the attendant factors" to determine if the evidence is "appropriate." *Id.* ("[t]he dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding").

> Once received, however, the question of how much weight an affidavit will be given is left to the trial court's discretion. The quality of the affidavit will have a significant effect on this determination. Not surprisingly, therefore, when the primary evidence introduced is an affidavit made on information and belief rather than on personal knowledge, it generally is considered insufficient to support a motion for a preliminary injunction. Courts similarly give hearsay statements less credence than direct allegations.

Wright & Miller at § 2949.[1]

---

[1] Notably, Fed. R. Evid. 101(a) provides that: "These rules apply to proceedings in United States courts. The specific courts and proceedings to which the rules apply, along with exceptions, are set out in Rule 1101." Fed. R. Evid. 1101(b) in turn provides that: "These rules apply in: . . . civil cases and proceedings". There is no exception in Fed. R. Evid. 1101(d) for proceedings on a motion for a preliminary injunction.

For example, if an affidavit lacks sufficient indicia of reliability, courts will strike portions of the affidavit supporting a motion for preliminary injunction based on hearsay or lack of personal knowledge. *See Bumpus v. Nat'l Credit Union Admin.*, 1992 WL 97984, at *2 (D. Mass. Apr. 29, 1992) (granting motion to strike portions of affidavits supporting motion for preliminary injunction based on hearsay and lack of personal knowledge). Thus, while courts may accept affidavits in support of a motion for preliminary injunction that violate evidentiary rules, they should do so only when the affidavits contain sufficiently reliable information and there are other indicia of fairness, such as the opportunity for the other party to depose or cross-examine the affiant or hearsay declarant. *See Asseo*, 805 F.2d at 26 (hearsay transcripts from prior administrative proceeding permitted to support motion for preliminary injunction because opposing party had opportunity to cross-examine declarants on pertinent issues at administrative hearing and court held three day evidentiary hearing before issuing preliminary injunction); *CCBN.com, Inc. v. c-call.com, Inc.*, 73 F. Supp. 2d 106, 113 (D. Mass. 1999) (denying motion to strike portions of affidavits supporting motion for preliminary injunction because, although based on hearsay, "affidavits contain sufficiently reliable and relevant information to overcome defendant's hearsay objection" and "defendant was allowed to depose the affiants").

## II.     The Court Should Strike or Disregard Portions of the Forman Affidavit.

Weruva's co-founder and president, David Forman, offers an affidavit and exhibits that violate the rules of evidence and are entirely unreliable. (Document No. 5; "Forman Aff."). Each offending portion of Mr. Forman's affidavit will be discussed in turn.

A. Paragraphs 9, 12, 16 and 17 and Exhibit E

The Court should strike or disregard paragraphs 9, 12, 16 and 17 of the Forman Affidavit. To begin, the statements are inadmissible hearsay.[2] Although that is not necessarily dispositive under *Asseo*, the statements are wholly unreliable and lack any indicia of fairness. Thus, under *Asseo* and *CCBN.com*, these hearsay statements are unworthy of this Court's consideration and should be stricken or disregarded. Unlike the opposing parties in *Asseo* and *CCBN.com*, Pets Global had no opportunity to depose or cross-examine the affiant or hearsay declarants. Such a feat would be literally impossible in this case. Forman does not even identify the declarants by name, instead using vague labels like "representatives," or "manufacturing facility," or "pet store owner in Carpinteria, California." Forman Aff. ¶¶ 9, 12, 16, 17. Because the declarants are unnamed, Pets Global cannot even investigate the sources of these statements and would have no way to challenge them. These statements also warrant exclusion because they are based on "information and belief rather than on personal knowledge, [which] generally is considered insufficient to support a motion for a preliminary injunction." Wright & Miller at § 2949.

This Court is tasked with "weighing all the attendant factors" and determining if consideration of the affidavit would be "appropriate". *Asseo*, 805 F.2d at 26. The Court should strike or disregard paragraphs 9, 12, 16 and 17 of the Forman Affidavit because the statements are inadmissible hearsay from unnamed declarants, are not based on personal knowledge and contain no indicia of reliability or fairness warranting consideration. Accordingly, it would not be "appropriate" under these circumstances to consider these statements. Finally, one "attendant factor" that should not go overlooked is that Weruva and Pets Global are direct competitors in a

---

[2] In each paragraph, Forman is offering an out-of-court statement of an unnamed person for the truth of the matter asserted. *See* Fed. R. Evid. 801, 802. No exception applies to save this blatant inadmissible hearsay. *See id.* at 803, 804.

6

{W3121615.2}

specialized market. There is, therefore, a clear and present risk of abusive and anti-competitive litigation and the Court should be particularly on guard against affidavits of suspect validity in this competitor suit, particularly from Weruva's president and co-founder.

Similarly, the Court should strike or disregard Exhibit E to the Forman Affidavit. Although Exhibit E is rather incomprehensible, it appears to be a list of ingredients with the word "China" superimposed on the bottom. *See* Forman Aff., Ex. E. Forman's explanation for Exhibit E is that, "the manufacturing facility . . . provided [him] with a list of those ingredients that it sources from China." Forman Aff. ¶ 12. Again, this mysterious list of dubious provenance is blatant inadmissible hearsay and should be stricken or disregarded for the same reasons discussed above. Exhibit E is also unauthenticated. *See* Fed. R. Evid. 901(a). It is impossible to tell who created this document, when it was created and why. Therefore, it would not be "appropriate" under these circumstances to consider Exhibit E.

B. Exhibits A & K

The Court should strike or disregard Exhibits A and K of the Forman Affidavit. According to Weruva, its customers have expressed concerns about its pet foods manufactured in Asia, Weruva Memo at p. 8-9, and its use of Menadione (synthetic Vitamin K-3) in its products. *Id.* at 10. Exhibits A and K ostensibly contain copies of emails written to Weruva from potential customers expressing these concerns. *See* Forman Aff., Ex. A, K. Puzzlingly, Weruva offers these exhibits to demonstrate that Pets Global somehow benefited by allegedly failing to disclose these aspects of its product event though Weruva's products are also manufactured in Asia and contain Menadione. Weruva Memo at 8-10.

After "weighing all the attendant factors," *Asseo*, 805 F.2d at 26, Exhibits A and K suffer from the same defects as discussed above. *First*, the emails themselves are inadmissible hearsay

7

from unnamed declarants.³  *Second*, the emails are inappropriately redacted and unauthenticated. *See* Fed. R. Evid. 901(a).  Without the originating email address, it is impossible to rule out the possibility that people associated with Weruva authored these emails and sent them to the corporate email address in connection with this competitor suit.  Likewise, Weruva did not provide sworn certifications from the email authors attesting that they in fact authored the emails and were Weruva customers or potential customers.  Because the declarants are unnamed, Pets Global cannot even investigate the sources of these statements and would have no way to challenge them.  These emails from unnamed senders are inadmissible hearsay, inappropriately redacted and contain no indicia of reliability warranting consideration.  It would not be "appropriate" under these circumstances to consider these exhibits.

    C.  <u>Exhibits G, H, I and J</u>

The Court should strike or disregard Exhibits G, H, I and J of the Forman Affidavit. According to Weruva, these exhibits express opinions from pet food "experts."  Exhibit G purports to demonstrate that one pet food "expert," Alissa Wolf, was duped into recommending Fussie Cat because of Fussie Cat's allegedly false drug claims.  Exhibit H purports to demonstrate that the same "expert" published an online article expressing concerns over cat foods manufactured in Thailand.  Finally, Exhibits I and J purport to demonstrate the allegedly widespread concern over the use of Menadione in pet food.  Weruva offers these exhibits as "expert" opinion to demonstrate that Weruva was harmed because its competitor, Pets Global, somehow benefited by failing to disclose these aspects of its product even though, as noted,

---

³ The emails are out-of-court statements written by declarants – the email senders – offered for the truth of the matter asserted – namely, that Weruva suffered harm by truthfully disclosing origin and contents. Likewise, no hearsay exception saves these otherwise inadmissible statements.

Weruva's own products are manufactured in Asia and contain Menadione. Weruva Memo at pp. 8-10.

After "weighing all the attendant factors," *Asseo*, 805 F.2d at 26, Exhibits G, H, I and J are so defective as to warrant exclusion. *First*, all of these "articles" are inadmissible hearsay.[4] And, although the names of the declarants are at least known, there are no indicia of reliability or fairness because Pets Global had no opportunity to depose or cross-examine the declarants or the affiant.

*Second*, Weruva provides no authentication or sworn certification that these "experts" are independent publishers of online content and actually wrote the text appearing in the exhibits. *See* Fed. R. Evid. 901. In a world in which one can find literally anything "published" online, these safeguards are especially important. It is essential to know who these authors are and the context behind the authoring of the selected articles. As with the email authors in Exhibits A and K discussed above, Weruva has supplied the Court with nothing to rule out the possibility that the purported "experts" and the online content in these exhibits were generated in connection with this competitor suit.

*Third*, Weruva is offering these articles as the opinions of "experts" in the pet food industry. The articles, however, are inadmissible because they do not satisfy any of the requirements for admissibility of expert opinion set forth in Fed. R. Evid. 702.

    1. *Alissa Wolf*

Weruva extols Ms. Wolf's various editorial credentials, noting that she worked for numerous regional magazines and newspapers as a journalist and is currently writing a book

---

[4] In each case, Weruva offers the author/declarant's out-of-court statement for the truth of the matter asserted. *See* Fed. R. Evid. 801, 802. No exception applies to save this blatant hearsay. *See id.* at 803, 804.

{W3121615.2}

specifically on the topic of cat nutrition.  Weruva Memo at 7.  The Wolf documents in Exhibits G & H label Wolf as an "About.com Guide" and appear to have been posted on About.com.[5]  As an initial matter, Weruva has not sufficiently qualified Wolf "as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Merely being in the process of writing a book about a topic does not make one an expert on that topic.  Likewise, Weruva fails to establish that "About.com Guides" are expert-qualified.  There is no indication of the publication standards on About.com or the qualification standards and rigor it employs to select the "Guides."  While Alissa Wolf may be fanatical about pet food, she is not qualified to offer an expert opinion in this case.

Even if she was qualified as an expert, Weruva has failed to meet its burden to show that Wolf's "conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."  *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998).  In Exhibit G, Wolf expresses an opinion recommending Fussie Cat and mentioning that Pets Global claims Fussie Cat supports urinary tract health.  One of the primary bases for her recommendation appears to be that her cat, Omar, likes to eat the food.  This conclusion, or testimony from Omar, was most certainly not "arrived at in a scientifically sound and methodologically reliable fashion."  *Id*.  In Exhibit H, Wolf expresses an opinion that cat foods manufactured in Thailand are not dangerous.  The primary basis of this opinion was

---

[5] "About.com" proclaims to offer "expert, quality content that helps users find solutions to a wide range of daily needs" and "provid[es] expert information on a large range of topics."  About.com website (http://www.advertiseonabout.com/about-us/).  Furthermore, "[a]ll About.com Guides are freelancers who work online and set their own schedules, giving them the flexibility to work at the time that's best for them."  *Id.* (http://beaguide.about.com/gdoverview.htm).  To become an "About.com Guide," one must "go through a two-part online orientation and evaluation program, learning about our editorial standards while writing articles and blog posts and publishing them on a test site with our publishing tools."  *Id.*

10

conversations with Weruva president, David Forman. This conclusion was similarly not "arrived at in a scientifically sound and methodologically reliable fashion." *Id*.

    2. *Sabine Contreras*

According to Weruva, Sabine Contreras "received her certification in animal care [and] runs the website www.dogfoodproject.com." Weruva Memo at p. 10. As an initial matter, Weruva has not come anywhere close to qualifying Contreras "as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Merely receiving a certification in animal care does not make one an expert on that topic, particularly without further explanation as to the nature of the certification. Likewise, Weruva fails to establish that Contreras' alleged website is anything more than a personal hobby site or blog.[6] Like Ms. Wolf, while Sabine Contreras may be fanatical about dog food, she is not qualified to offer an expert opinion in this case.

Even if she was qualified as an expert, Weruva has failed to meet its burden to show that Ms. Contreras's "conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Ruiz-Troche*, 161 F.3d at 85. In Exhibit I, Ms. Contreras concludes that Menadione is potentially harmful to animals. She arrives at her conclusion after discussing the effect of Menadione on humans and then commenting on a number of claims made by pet food industry. This conclusion was hardly "arrived at in a scientifically sound and methodologically reliable fashion." *Id*.

---

[6] According to her website, Ms. Contreras, "[a]s one of her larger dog-related projects, . . . has researched the pet industry in general and commercial dog food specifically since 2000 and is the author of the successful website The Dog Food Project, which is frequently updated with new information." *See* unspecified website (http://www.betterdogcare.com/?page=about).

11

{W3121615.2}

*3. Susan Thixton*

According to Weruva, Susan Thixton is the author of "Buyer Beware: The crimes, lies and truth about pet food" and is a contributor to a cookbook for pets. Weruva Memo at p. 10. Ms. Thixton also operates the website "TruthaboutPetFood.com." According to her website, she "went to college on a horsemanship scholarship," and started her own dog obedience school and later operated a dog kennel. *See* http://www.truthaboutpetfood.com/about-truthaboutpetfoodcom.html. After her favorite dog died of cancer, she "studied pet foods, pet food ingredients, and the regulations that govern them." *Id.*[7] As an initial matter, Weruva has not qualified Thixton "as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. She admittedly has no specialized knowledge, training or education relating to pet food chemicals. Likewise, Weruva fails to establish that her website is anything more than a personal hobby site or blog. Like Ms. Wolf and Ms. Contreras, Susan Thixton is apparently fanatical about pet food, but is not qualified to offer an expert opinion in this case.

Even if she was qualified as an expert, Weruva has failed to meet its burden to show that Ms. Thixton's "conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Ruiz-Troche*, 161 F.3d at 85. In Exhibit J, Ms. Thixton concludes that Menadione is potentially harmful to animals. She arrives at her conclusion after discussing research regarding the effect of Menadione on humans and noting that Vitamin K can be provided to animals in more natural ways. This conclusion was not "arrived at in a scientifically sound and methodologically reliable fashion." *Id*.

---

[7] According to Thixton, "[w]hen you read my articles on this site, you'll see I'm no journalist. However, I am a pet owner who knows that good nutrition makes a huge difference in the quality of a pet's life. I am a pet owner that has been crushed by the irresponsibility of a pet food company that cared more about profits and shelf life than about my dog. I believe every pet owner should know the 'truth.'" *Id.*

12

D.  Exhibit F

The Court should strike or disregard Exhibit F of the Forman Affidavit.  Exhibit F purports to be an online reference article published by the ASPCA describing urinary tract problems in felines.  Weruva cites this article as expert authority for the proposition that "[t]his is a medical emergency that can very quickly lead to kidney failure and/or rupture of the bladder, and can prove fatal if the obstruction is not relieved right away."  Weruva Memo at p. 8.

After "weighing all the attendant factors," *Asseo*, 805 F.2d at 26, Exhibit F is so defective as to warrant exclusion.  *First*, the article is inadmissible hearsay.[8]  And, although the name of the institutional declarant is at least known, there are no indicia of reliability or fairness because Pets Global had no opportunity to depose or cross-examine the declarant or the affiant.

*Second*, Weruva offers no authentication.  Fed. R. Evid. 901(a).  The article appears to be authored by an institution, but Weruva provides no website address or dates on which Weruva accessed the article.  Likewise, Weruva provides no certification from the author acknowledging the article's publication.  Exhibit F is not self-authenticating under Fed. R. Evid. 902 because, without more information, it is unclear whether the Exhibit qualifies as an official publication under Fed. R. Evid. 902(5).

*Third*, Weruva has clearly proffered this article as expert opinion on urinary tract infections in felines.  The article, however, does not comport with any of the requirements for admissibility of expert opinion set forth in Fed. R. Evid. 702.  The article is devoid of any indication that the "conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."  *Ruiz-Troche*, 161 F.3d at 85.  Weruva's unqualified expert opinion in Exhibit

---

[8] Weruva offers the author/declarant's out-of-court statement offered for the truth of the matter asserted.  *See* Fed. R. Evid. 801, 802.  No exception applies to save this blatant hearsay.  *See id.* at 803, 804.

F is inadmissible and should be stricken or disregarded by the Court. It would not be "appropriate" under these circumstances to consider this exhibit.

**III.    The Court Should Strike or Disregard the Woolf Affidavit.**

Howard Woolf is an executive director at Jana Brands, Inc., a company owned by Steve Forman, the father of Weruva's co-founder and president David Forman. Forman Aff., Ex. H; Jana Brands' website (http://www.janabrands.com/about_jana_brands.html). Woolf states that Jana Brands supplies tuna to Subway restaurants and its franchisees. (Document No. 6; "Woolf Aff." ¶ 3). Woolf further states that Subway "does not sell its tuna to, nor purchase its tuna from, Pets Global, Inc." *Id.* at ¶ 4. Weruva offers the Woolf Affidavit to establish that "[t]una sold by Subway . . . [is] not sold to [Pets Global] . . . [and] Subway does not purchase its tuna from [Pets Global]." Weruva Memo at p. 13. Weruva offers this to rebut statements Pets Global allegedly made that it uses the same tuna as Subway. *Id.*

The "attendant factors," *Asseo*, 805 F.2d at 26, again weigh in favor of striking or disregarding the Woolf Affidavit. *First*, to the extent Woolf is merely relaying facts that Subway representatives communicated to him, his affidavit is inadmissible hearsay. How would Woolf have personal knowledge of to whom Subway sells its tuna? Most probably, the Woolf Affidavit should read, "A Subway representative told me that . . .," which is clearly hearsay.

*Second*, Woolf's statements are wholly irrelevant to this case. Weruva claims that Pets Global misrepresented that its products contain the same tuna used by Subway. Weruva Memo at p. 12. Who buys tuna from, or sells tuna to Subway is wholly irrelevant. Even Weruva has not asserted that Pets Global claimed it buys tuna from, or sells tuna to, Subway. There is a distinction between claiming to have a supplier relationship and merely claiming to use the same

ingredient.[9]  The Woolf Affidavit is a red herring.  The Court should trim this excess fat from this case and it would not be "appropriate" under these circumstances to consider this exhibit.

**IV.     The Court Should Strike or Disregard the Directo Affidavit.**

Michael Directo is a sales manager at Weruva.  (Document No. 9; "Directo Aff." ¶ 2). Directo asserts that the photographs attached to his affidavit depict "a display for Pets Global's Fussie Cat brand cat food at an independent pet store in San Diego, California in late-2011." *Id.* at ¶ 3.  According to Directo, the display included a "Made in the Starkist plant" sign.  *Id.* Attached, are black and white copies of photographs depicting a display of Fussie Cat and another cat food.  *Id.* at Ex. A.  Weruva offers the Directo Affidavit to establish that Pets Global misrepresented the origin of its tuna.  *See* Weruva Memo at p. 13.

The "attendant factors," *Asseo*, 805 F.2d at 26, again weigh in favor of striking or disregarding the Directo Affidavit and its Exhibit A.  *First*, Directo offers nothing to authenticate the photographs in Exhibit A.  *See* Fed. R. Evid. 901.  Directo does not claim that he took the photographs.  *See* Directo Aff.  In fact, Directo does not even state who did take the photographs. *Id.*  Directo does not provide a definite date or place where the photographs were allegedly taken. *Id.*  Likewise, the images do not contain a time or date stamp.  *Id.* at Ex. A.  Directo includes no certification from the pet store owner or anyone else stating the photographs are what he claims them to be.  These photographs are unauthenticated and inadmissible.

*Second*, even if the images were properly authenticated, the photographs are irrelevant. The first photograph in Exhibit A, which is the key image upon which Weruva relies, depicts a handwritten sign hung on a shelf between two brands of cat food.  Directo Aff., Ex. A.  There is

---

[9] There is, for example, a difference between stating that "I buy the chocolate chips I use in my product from Ben and Jerry's Ice Cream," and stating that "I use the same chocolate chips in my product as Ben and Jerry's."

simply no nexus between this sign and Pets Global or its products, let alone that the handwritten sign was in any way authored, approved or sanctioned by Pets Global. Who wrote the sign? Who put the sign there and at whose direction? It could have been an employee of the "independent pet store in San Diego" acting on something he or she heard or read unattributed to Pets Global and simply trying to sell more cat food. To which cat food brand does the sign refer? Given the placement of the sign between two brands and the narrow perspective of the photograph, it is impossible to tell with any certainty. Without answers to these questions, this dubious photograph is irrelevant to this case. Weruva asks this Court to distort the rules of evidence to a shocking degree. This Court should not oblige. It would not be "appropriate" under these circumstances to consider the Directo Affidavit and its Exhibit A.

## V.     The Court Should Strike or Disregard the Wangerin Affidavit.

Daniel Wangerin is a regional sales manager at Weruva. (Document No. 7; "Wangerin Aff." ¶ 2). Wangerin states that Pets Global gave its presentation materials to an "independent pet store in Nashville, TN," which then passed those materials along to him. *Id.* at ¶ 3. A copy of the alleged presentation materials are attached to Wangerin's Affidavit. *Id.*, Ex. A. Weruva offers the Wangerin Affidavit to support its contention that Pets Global made false claims of medical benefits and that its products do not contain ingredients from China. Weruva Memo at pp. 7, 9.

The "attendant factors," *Asseo*, 805 F.2d at 26, again weigh in favor of striking or disregarding the Wangerin Affidavit and its Exhibit A. *First*, Wangerin's Affidavit contains inadmissible hearsay summarizing what he was told by "the owner of the independent pet store." Wangerin Ex., ¶ 3. Although that is not dispositive under *Asseo*, the statements are wholly unreliable and lack any indicia of basic fairness. Thus, under *Asseo* and *CCBN.com*, this hearsay

16
{W3121615.2}

statement is unworthy of this Court's consideration and should be stricken or disregarded. Unlike the opposing parties in *Asseo* and *CCBN.com*, Pets Global had no opportunity to depose or cross-examine the hearsay declarant or the affiant. Such a feat would be literally impossible in this case. Wangerin does not even identify the declarant by name, instead using the vague label "owner of independent pet store." Wangerin Aff. ¶ 3. Because the declarant is unnamed, Pets Global cannot even investigate the source of the statement and would have no way to challenge it.

*Second*, Exhibit A is infirm because it is not authenticated. *See* Fed. R. Evid. 901. There is no indication on the presentation materials, or from Wangerin, when these materials were allegedly circulated. For instance, when did Pets Global allegedly provide these materials to the unnamed "owner," and when did the unnamed "owner" allegedly provide them to Wangerin? Likewise, the unnamed "owner" did not provide a certification explaining how he or she came into possession of these materials. Assuming for a moment that Pets Global generated the materials in Exhibit A, perhaps it gave them to the unnamed "owner" to review and provide feedback before intending to circulate. The rules of evidence are designed to help answer these questions, which Weruva has ignored. Without more indicia of reliability, the Wangerin Affidavit and its Exhibit A should be stricken or disregarded. It would not be "appropriate" under these circumstances to consider the Wangerin Affidavit and its Exhibit A.

## VI. Fundamental Unfairness Will Result to Pets Global if the Court Considers Weruva's Defective Affidavits.

The affidavits and exhibits supporting Weruva's motion for preliminary injunction are a shockingly cavalier attempt to distort the rules of evidence and place inadmissible and unreliable evidence before this Court in an effort to harm a legitimate competitor. Weruva submits inadmissible hearsay, many unauthenticated documents and photographs, wholly irrelevant

17

materials and unqualified "expert" opinion. For the reasons discussed above, the Court should strike or disregard those offending affidavits and exhibits. Additionally, however, this case presents several non-evidentiary factors that militate against this Court's acceptance of Weruva's unreliable evidence.

The preliminary injunction is an "extraordinary and drastic remedy that is never awarded as of right." *Peoples Fed. Sav. Bank*, 672 F.3d at 8-9. The remedy is even more extraordinary, and the burdens heightened, when, as here, the movant seeks mandatory action on the part of the non-moving party. *See Mass. Coal. of Citizens with Disabilities*, 649 F.2d at 76 n.7; *Accusoft Corp. v. Quest Diagnostics, Inc.*, 2012 WL 1358662, at *9 (D. Mass. Apr. 18, 2012) (at preliminary injunction stage, a "recall on this scale would impose heavy and unnecessary costs on [defendant] and its customers"). Because of the extraordinary nature of this remedy and Weruva's heavy burden to obtain it, the Court should be on heightened alert for unreliable evidence supporting such a motion.

Moreover, Weruva and Pets Global are direct competitors in a specialized market. Obviously, the risk of abusive or anti-competitive litigation is clear and present. Here, Weruva comes to the courthouse seeking to impair its primary competitor, a result it apparently could not secure in the open marketplace. It does so, however, with unreliable affidavits and exhibits created without any thought to the rules of evidence.[10] Simply put, this Court should be on

---

[10] As discussed in detail above, Weruva submits many inadmissible hearsay statements without even identifying the declarant. Likewise, Weruva did not bother to authenticate, or even attempt to authenticate, any of the documents or photographs in the exhibits discussed above.

heightened alert for defective and unreliable affidavits supporting a motion for preliminary injunction sought against a direct competitor.[11]

## **CONCLUSION**

For the foregoing reasons, the Court should strike or disregard paragraphs 9, 12, 16 and 17 and Exhibits A and E-K of the Forman Affidavit; the Woolf Affidavit; the Directo Affidavit and its Exhibit A; and the Wangerin Affidavit and its Exhibit A.  Likewise, the Court should strike and/or disregard any references to these affidavits and documents in Weruva's Motion and Weruva's Memo for preliminary injunction.

Dated: May 25, 2012

>Respectfully submitted,
>
>PETS GLOBAL, INC.
>
>By its attorneys,
>
>/s/ Larry L. Varn
>Larry L. Varn (BBO #508130)
>lvarn@pierceatwood.com
>Jeffrey E. Francis (BBO #639944)
>jfrancis@pierceatwood.com
>PIERCE ATWOOD LLP
>100 Summer Street, Suite 2250
>Boston, MA  02110
>Telephone: (617) 488-8100
>Facsimilie: (617) 824-2020

---

[11] The rules of evidence are, after all, to "be construed so as to administer every proceeding fairly . . . and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination."  Fed. R. Evid. 102.

{W3121615.2}

## CERTIFICATE OF SERVICE

  I hereby certify that on the 25th day of May, 2012, I electronically filed the above-document and that such document is available for viewing and downloading from the court's ECF system. Service on counsel of record has been effectuated by electronic means.

                     */s/ Larry L. Varn*