UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WERUVA INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> PETS GLOBAL, INC. d/b/a Fussie Cat and Premium Fussie Cat, <br><br> Defendant. | ) <br> ) <br> ) CASE NO.: 1:12-cv-10447 (WGY) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONTINUE JURY TRIAL**

The plaintiff, Weruva International, Inc. ("Weruva"), respectfully submits this Motion to Continue the Jury Trial. PGI has withdrawn its Motion for Preliminary Injunction and requests a jury trial on the merits in September of 2012,[1] based on the Court's availability.

A jury trial in the matter is currently scheduled for July 2, 2012 and no prior continuances have been sought or granted. The Defendant does not oppose the instant motion.

Good cause exists for the requested continuance because, although the parties have attempted to begin discovery efforts within the truncated discovery schedule of two weeks, it has become clear that, through no fault of either party, the essential witnesses in this case – on both liability and damages – are too numerous and geographically spread out to permit the parties to engage in a meaningful discovery effort or to appropriately prepare for the trial of this action. Specifically, Weruva requires a larger time period in which to engage in discovery; essential witnesses like the owner of PGI, Raymond Lee, and the owner of the factory where PGI's cat

---

[1] Weruva intends to maintain, and does not hereby waive, its right to request a permanent injunction at the close of trial. It does however affirm that it will not seek interim relief pursuant to Fed. R. Civ. P. 65.

food is manufactured and packaged, and its labels are applied, are overseas and cannot be compelled to testify at trial, or deposed in accordance with rules governing international judicial process in Singapore and Thailand (where they each work and reside respectively) in such a short amount of time.  Furthermore, Weruva intends to commission a customer survey concerning PGI's allegedly false and misleading statements.

Weruva's anticipated expert witness, Carl Jenkins, in addition to serving as an expert witness in a case presently on trial at the New Bedford Superior Court, requires more than two weeks to analyze all of the financial data which would be produced by both parties and any third-party witnesses in order to offer an opinion as to the extent of Weruva's damages.  Moreover, the schedules of Weruva's employees, some of whom will be in California for the duration of next week for an important pre-scheduled professional trade show, while others have prescheduled meetings in Tennessee with important customers, make it extremely difficult, if not impossible, to prepare for trial by July 2, 2012.  In addition, one of Weruva's key witnesses is scheduled to be in Korea during the week of July 4, 2012.

Consequently, Weruva, in consultation with counsel for PGI, has agreed to withdraw its Motion for Preliminary Injunction – thereby removing it from the consolidation procedure permitted by Fed. R. Civ. P. 65(a)(2) – and now requests that this Court schedule the trial for a date in September so that the parties can be assured to have all relevant witnesses heard, either through live testimony or deposition transcripts, at trial, and so that they can engage in the type of discovery effort that is likely to be meaningful and less intrusive on the schedules of counsel, parties, and witnesses.

Weruva's motion is supported by this Memorandum, the Affidavit of Charles F. Rodman, Esquire ("Rodman Aff."), the Affidavit of Carl Jenkins ("Jenkins Aff."), the Affidavit of David Forman ("Forman Aff."), and all other files and records in the above-titled matter.

## I.  BACKGROUND

As alleged in the Complaint, Weruva, a pioneer in the "human style" pet food market filed suit against PGI, a direct competitor of Weruva, that resorted to using a host of literally false and misleading statements intentionally designed to mislead consumers and harm competitors.  PGI's marketing campaign, which unlawfully does not refer to its cat food as "cat food" on its labels, but instead unlawfully labels its cat food as "human grade product," also promises unsubstantiated medical benefits.  PGI has employed an unlawful marketing scheme by: (i) marketing its cat food as preventing urinary tract infections without the requisite scientific support, in violation of the Federal Food, Drug, and Cosmetic Act; (ii) advertising that its products are made in the United States when, in fact, they were manufactured in Thailand in violation of the 21 CFR 501.18; (iii) advertising that its products do not contain any ingredients from China even though the products contain seven different ingredients that are sourced from China in violation of the Lanham Act;  (iv) failing to disclose that its products are cat food and instead representing that its cat foods are fit for human consumption even though many of PGI's products contain an ingredient that is not fit for human consumption in violation of 21 U.S.C. § 348 and 21 CFR 573.620; (v) failing to disclose its use of Menadione Sodium Bisulfite Complex, a synthetic vitamin K analog, that the FDA only permits to be used in animal feed in violation of 21 CFR 501.4;  (vi) falsely claiming that its tuna is the same as that sold tom and by, Subway restaurants, in violation of Lanham Act (vii) is manufactured at the Starkist plant in violation of

Lanham Act; and (viii) using product labels that do not comply with Federal (21 CFR 501.105) and State (e.g. 330 CMR § 13.03) labeling requirements.

PGI denies having engaged in any unlawful conduct.

On March 9, 2012, Weruva filed a Complaint against PGI in which it alleged three causes of action: (i) Violation of the Lanham Act; (ii) Unfair and Deceptive Trade Practices; and (iii) Tortious Interference with Business Relations.  On May 14, 2012, Weruva filed a Motion for Preliminary Injunction.  On June 15, 2012, PGI filed its Answer to the Complaint and its Opposition to Weruva's Motion for Preliminary Injunction.

A hearing was held on June 18, 2012 on Weruva's Motion for Preliminary Injunction. During the June 18, 2012 hearing, the Court set this matter for trial on July 2, 2012.

## II.     ARGUMENT

Both the liability and damages aspects of this case are complex and involve the testimony of numerous witnesses spread out all over the globe.  This multifaceted and complex case involves more than labels on cans of cat food, but also PGI's national marketing campaign and the representations PGI made concerning its relationship with established brands, such as Subway restaurants, Starkist tuna, and Weruva.

"In determining a continuance of the trial date should be granted, "the court should evaluate the facts of the particular case and not mechanically apply a test." Amarin Plastics, Inc. v. Maryland Cup Corp., 946 F.2d 147, 151 (1st Cir. Mass. 1991).  "The court may look at prior delays and their reasons, the hardship to the nonmovant, and the good faith of the movant." Id. (citing United States v. Lussier, 929 F.2d 25 (1st Cir. 1991); United States v. Waldman, 579 F.2d 649 (1st Cir. 1978).  An "unreasoning and arbitrary insistence upon expeditiousness in the face

of a justifiable request for delay" constitutes an abuse of discretion.  United States v. Torres, 793 F.2d 436, 440 (1st Cir. 1986) (citing Morris v. Slappy, 461 U.S. 1, 11-12, (1983)).  Weruva is requesting a brief (less than 90 days) continuance of the trial date so that the parties may meaningfully engage in discovery, have expert(s) analyze all of the relevant financial and sales data needed to present testimony at trial, and prepare for trial.  Prior to the June 18, 2012 hearing, the parties had not engaged in any discovery.

### A.  Weruva Requires Additional Time to Engage in Discovery

Unfortunately, the facts of this case – and the many witnesses who possess those facts – are not localized to the Boston Metro geographic area, but are broadly spread out across the United States and Asia.  As a result, Weruva must take the depositions of witnesses that are located in other areas of the United States and abroad to use at trial in lieu of live testimony.  See Fed. R. Civ. P. 32(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: […] that the witness is more than 100 miles from the place of hearing or trial…").  There are witnesses located in Singapore, Thailand, Southern California, Northern California, Florida, Illinois, New York, Pennsylvania, Tennessee, West Virginia, and the state of Washington.  As disclosed in Weruva's Initial Disclosures, a partial list of witnesses whose testimony Weruva intends to rely upon include:

(i) Joe Kiang, Apichai Sriarunluck, and any other necessary representatives from Southeast Asian Packaging and Canning Ltd., located in Samut Prakarn, Thailand;

(ii) Raymond Lee, located in Singapore;

(iii)   Daniel John Hereford, located in or around North Hollywood, California;

(iv)   Joseph John Hereford, located in Lemon Grove, California;

(v)   Henry Lam, located in or around Tampa, Florida;

(vi)   David Dzanis, located in San Diego, California;

(vii)   Alissa Wolf, located in or around Philadelphia, Pennsylvania;

(viii)   Sabrina Contrares, located in or around Los Angeles, California;

(ix)   Susan Thixton, located in or around Tampa, Florida;

(x)   Mike Baker, a pet food distributor in Rhode Island;

(xi)   David Levy, a pet food distributor in Chicago, Illinois;

(xii)   Diane Sheenan, a pet food store owner in El Cajon, California;

(xiii)   Mike Silverman, a pet food store owner in Merrick, Long Island;

(xiv)   George DiGuido, a pet food store owner in Brooklyn, New York;

(xv)   Peter Katz, a pet food distributor in Queens, New York;

(xvi)   Jim Castleberry, a manager at a pet food store in Seattle, Washington;

(xvii)   Deb Wilson, a former pet food store employee, located in Seattle, Washington;

  (xviii) Mr. Meltzer, the owner of a pet food store located in Oceanside, New York;

  (xix) Howard and Barbara Ratner, the owners of a pet food store located in Boca Raton, Flordia; and

  (xx) Representatives of the pet food store in Carpintina, California who as allegedly told by Daniel Hereford that Subway restaurants purchase tuna from PGI.

Rodman Aff., ¶ 4, Ex. A.

  Since these witnesses cannot be summoned to appear for trial in Boston, Massachusetts, it is imperative that Weruva be permitted to depose these witnesses. In its Opposition to Weruva's Motion for Preliminary Injunction, PGI objected to the admissibility of statements made by several of these witnesses on the ground that it had not yet had an opportunity to depose these witnesses. (<u>See</u> Docket No. 17, PGI's Motion to Strike and/or Disregard Certain Affidavits and Documents Proferred By The Plaintiff, at p. 6, 9, 13, and 17 ("Pets Global had no opportunity to depose or cross-examine the affiant or hearsay declarants.")). There will certainly be evidentiary objections made at the time of trial, making these depositions even more necessary.

  In addition, Weruva requires discovery related to the sales of Fussie Cat from PGI's distributors to the individual stores and statements made by PGI to those distributors. PGI has yet to identify its distributors.

  The witnesses are not only critical for Weruva's case in chief, but are necessary to analyze PGI's claimed defenses. For instance, one of PGI's defenses rests on a claim by Daniel Hereford that he was initially informed by Southeast Asian Packaging and Canning Ltd. that it

did not use ingredients from China.  The deposition of a representative of Southeast Asian Packaging and Canning Ltd. will be vital to rebut Hereford's claim.

Surveys have become a commonly accepted method of determining materiality.  See President and Trustees of Colby College v. Colby College, 508 F.2d 804, 809 (1st Cir. 1975); JTH Tax, Inc. v. H&R Block East Tax Serv., Inc., 28 Fed. App. 207 (4th Cir. 2002); Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489 (5th Cir. 2000);  Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254 (2d Cir. 1987); Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership, 34 F.3d 410, 415-16 (7th Cir. 1994); Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 523 (10th Cir. 1987); Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc); Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 795, 797 (5th Cir. 1983); Centaur Communications, Ltd. v. A/S/M Communications, Inc., 652 F. Supp. 1105, 1110 (S.D.N.Y. 1987).

In Alpo v. Purina, a case similar to the one here in that it involved  false claims that pet food provided medical benefits, the "evidence included surveys of veterinarians and consumers, Ralston officials' own assessments of the advertising campaign, and several expert witnesses' interpretations of data on puppy food sales and market shares."  913 F.2d. 958 (1990).  The evidence led "[t]he court [to] conclude[] that the challenged ads materially increased Ralston's sales and profits, and that, given the vigorous interbrand competition during the period at issue, the increases came at the expense of ALPO and other competitors of Ralston."  Id. (Alteration to original).

Weruva intends to commission a survey concerning PGI's allegedly false and misleading statements and use the results of the survey at trial.  Weruva has been informed that a survey will take longer than two weeks to complete.

**B.  Weruva's Potential Expert Requires Time to Analyze All of the Data**

For purposes of the preliminary injunction, harm is different than damages.  E.g. Camel Hair & Cashmere Institute, Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 15-16 (1st Cir. 1986) ("An injunction, as opposed to money damages, is no windfall to the commercial plaintiff.  An injunction protects both consumers and the commercial plaintiff from continuing acts of false advertising.").  For purposes of establishing monetary damages, Weruva intends to call several expert witnesses for purposes of quantifying its damages.  Weruva's experts have requested that Weruva's counsel request the following records be produced by PGI:

(i)    Sales of PGI's products by product line, date, and location;

(ii)   Gross and Net Margins on PGI's different products;

(iii)  Marketing efforts by PGI

(iv)   A list of all of the various markets/regions that PGI sells its products, and the dates in entered into those markets;

(v)    The various labels used by PGI – including when and where the labels were used and the changes in those labels over time;

(vi)   Internal monthly reporting of sales;

(vii)  Audited financial statements;

(viii) Distributor data regarding timing of sales, geographic location for sales, and reports reflecting trends and changes in sales data for each market/region in which PGI and Weruva engage in business;

(ix)   Tax Returns; and

(x)    Projections and/or forecasts for Pets Global, Inc. and Weruva.

(Jenkins Aff., ¶ 5). Even after reviewing the above-referenced documents, Weruva's expert may require additional documents from Weruva and PGI to render an opinion as to the extent of Weruva's damages. (Jenkins Aff., ¶ 6). Once this data is produced by PGI, Weruva's expert can analyze the data and create a report based on his finding as to how PGI's conduct impacted Weruva. This is in addition to reviewing and analyzing all of the data from Weruva concerning its sales. Assuming that PGI produces all of the requested documents on or before June 26, 2012, it would provide Weruva, its attorneys, and its experts less than five days to review and analyze all of the documents. Furthermore, Weruva's expert would be required to analyze this data while currently acting as an expert in another trial and under a deadline in the United States District Court (Zobel, J.) to respond to a Motion by June 29, 2012. (Jenkins Aff., ¶ 3-4). The truncated period of time is insufficient to cull and analyze of all of the necessary data.

### C. Weruva Witnesses Are Unavailable To Prepare For And/Or Attend Trial.

Due to preexisting schedules, many of Weruva's employees and experts are not available to engage in discovery and prepare for trial in the truncated period of time permitted. (Forman Aff., ¶ 3-4). Carl Jenkins, who Weruva currently intends to call as its expert is currently involved in a trial that is scheduled to proceed through July 6, 2012. (Jenkins Aff., ¶ 3). Weruva also intends to call Bruce Levine, CPA, as a witness. Mr. Levine is unavailable, due to a prior engagement, from July 2, 2012 through July 6, 2012. (Rodman Aff., ¶ 4). Michael Directo is scheduled must be in Korea overseeing the production of some of Weruva's packaging during the week of July 4, 2012. (Forman Aff., ¶ 4). Mr. Directo's absence from the production of the packaging would disrupt Weruva's supply chain and would set back the production of various

product lines by eight to twelve weeks. (Id.). Such a production delay would cause substantial financial hardship to Weruva.

### D. The Focus Should be on Getting it Right as Opposed to Getting it Done.

Simply put, this case is on "too fast a track." See Caribbean Produce Exchange, Inc. v. Secretary of Health & Human Services, 893 F.2d 3, 5 (1st Cir. 1989) ("Unlike many cases we review, which seem to have taken an unconscionable time to reach the appellate level, this case suffers from the opposite defect, too fast a track. The court was obviously pursuing the generally admirable objective of saving time and duplication of effort by consolidating the proceedings seeking preliminary injunctive relief with those seeking permanent relief. […] Courts, however, have recognized the all-too-real hazards inherent in fully disposing of cases in such an expedited fashion -- among them incomplete coverage of relevant issues and failure to present all relevant evidence.") (Alteration to original). "[A] truncated hearing will often limit the parties' opportunity to present and thoroughly examine witnesses. For this reason, our law 'demand[s that a trial court provide] 'indisputably clear notice' to the parties before approving . . . consolidation.'" Lamex Foods, Inc. v. Audeliz Lebron Corp., 646 F.3d 100, 107 (1st Cir. 2011) (quoting Francisco Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 15 (1st Cir. 2009)). "It is apodictic that the district court's power in this regard must be tempered by the due process principle that fair notice and an opportunity to be heard must be given the litigants before the disposition of a case on the merits." K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 913 (1st Cir. 1989).

"[T]he courts have commonly required that 'the parties should normally receive clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before

11

the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.'" Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (U.S. 1981) (citing Pughsley v. 3750 Lake Shore Drive Cooperative Bldg., 463 F.2d 1055, 1057 (7th Cir. 1972); Nationwide Amusements, Inc. v. Nattin, 452 F.2d 651 (4th Cir. 1971)).

The facts of this case require more than two weeks to complete all discovery and adequately prepare for trial.

### III. CONCLUSION

For the reasons set forth above, Weruva respectfully requests that the Court continue the jury trial to September 2012.

Dated: June 21, 2012

WERUVA INTERNATIONAL, INC.
By its attorney,

*/s/ Charles F. Rodman*
Charles F. Rodman, BBO# 641216
RODMAN LAW GROUP LLC
36 Washington Street, Suite 190
Wellesley, MA 02481
(781) 237-5500
(781) 237-5550 [fax]
rodman@rodmanlawgroup.com