UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WERUVA INTERNATIONAL, INC.,    ) | |
| ) | CASE NO.: 1:12-CV-10447 (WGY) |
| Plaintiff   ) | |
| v.   ) | |
| ) | |
| PETS GLOBAL, INC. d/b/a Fussie Cat and  ) | |
| Premium Fussie Cat,   ) | |
| ) | |
| Defendant   ) | |

## JOINT PRETRIAL MEMORANDUM

In accordance with Local Rule 16.5(D), the Plaintiff, Weruva International, Inc.

("Weruva"), and the Defendant, Pets Global, Inc. ("Pets Global"), hereby submit the following

Joint Pretrial Memorandum:

**I.      Concise Summary of the Evidence**

    A.      Plaintiff's Summary

### Introduction

This case arises from a widespread chain of underhanded, misleading, and deceptive

marketing tactics that Pets Global employed upon its entry into the United States pet food

marketplace – many of which continue even today, notwithstanding the fact that Pets Global has

received ample notice from concerned consumers, pet food stores, and state regulatory

authorities alike that its marketing campaign is unlawful and deceptive.  At a minimum, Pets

Global's reckless marketing tactics include:

    (1)      Pets Global's unsubstantiated and literally fictitious claims that its cat food products

        provide medical benefits – such as the outright prevention of urinary tract disease –

        without having so much as a scintilla of scientific or medical data to support such

outlandish claims (indeed, not a single document evidencing the existence of any

scientific or medical support for these claims has been provided in response to

Weruva's request for the same);

(2)     Pets Global's deceitful claims that its cat food products are "Made in the U.S.A."

when they, in fact, are made in Thailand at the same factory where Weruva's products

are made;

(3)     Pets Global's false and misleading misrepresentations and omissions about its

products ingredients, including: (i) Pets Global's claims that its products do not

contain ingredients from China (when in fact they do); (ii) Pets Global's failure to

properly disclose that its products contain Menadione Sodium Bisulfite Complex, a

synthetic vitamin K analog; and (iii) Pets Global's underreporting of the ash content

in its products (an ingredient that is actually <u>linked</u> to urinary tract problems);

(4)     Pet's Global's dishonest efforts to boost the credibility of its own cat food products

by misleading consumers into believing that Pets Global's products: (i) are similar to

Weruva's (which they are not); (ii) were manufactured in the Starkist plant (which

they were not); and (iii) contain the same tuna that is served at Subway restaurants

(which they most certainly do not);

(5)     Pet Global's refusal to refer to its cat food as "cat food" – instead, Pets Global has

hoaxed pet parents into believing that Pet Global's products are "human grade

products" that are "fit for human consumption (which they undoubtedly are not); and

(6)     Pets Global's systematic misrepresentations that each and every one of its products is

comprised from a "New and Improved" formula, notwithstanding the fact that Pets

Global claims to have been in the United States market for less than two years, and is

not believed to have introduced any "new" or "improved" formulas into the

marketplace during that time.

As a defense against Weruva's claims in this lawsuit, Pets Global places a great degree of "spin"

on Pets Global's entry into the United States marketplace as a competitor to Weruva.  Were Pets

Global's rhetoric (and that is all it is) to be believed, one could come to the conclusion that

Weruva's institution of this lawsuit is simply a tactic to gain a competitive advantage in the pet

food marketplace – and nothing more.  This could not be further from the truth.  Weruva does

not intend to stifle honest and fair competition through the institution of this lawsuit.  Quite the

opposite, Weruva intends to stop <u>unfair and dishonest</u> competition.

It is certainly true that Weruva, founded in 2006, is a pioneer in the "human style" pet

food market.  Even Pets Global must concede that Weruva has pioneered a unique and novel

product Weruva describes as "human style" pet food.  Since 2006, some four years before Pets

Global claims to have entered the United States pet food marketplace, Weruva has sold its

unique and creative brand of pet food to independent pet stores (mom and pop) throughout the

United States and Canada.  Weruva's unique and ultra-niche "human style" of food is limited to

very few manufacturers in an industry that otherwise contains hundreds of brands.

Pets Global, on the other hand, claims only to have begun its United States operations in

2010 and sells its cat food under the name "Fussie Cat" and/or "Premium Fussie Cat."  It is

undisputed that Pets Global is a direct competitor of Weruva and markets itself as such.  In an

effort to unfairly infringe upon Weruva's own market share, Pets Global has gone so far as to

advertise itself as the same product as Weruva, only less expensive.  What is even more

troublesome, and what led to Weruva's institution of this lawsuit, is the fact that Pets Global

touts its products as being better and cheaper than Weruva's products using a host of literally

false and misleading claims about its products – claims that are undeniably intended to mislead consumers and harm competitors, such as Weruva.

There can simply be no dispute as to the extent of Pets Global's unfair and misleading marketing and labeling practices.  Indeed, setting aside Pets Global's hyperbolic understatement of the literally false claims that appear throughout its marketing materials, and on thousands of cans of its cat food, an overwhelming majority of the evidence will unquestionably establish that: (i) Pets Global made a series of false or misleading statements about pet food products that traveled through interstate commerce; (ii) these false or misleading statements actually deceived consumers, or at the very least created a tendency that a substantial portion of consumers were deceived; (iii) such deception is material and likely to influence consumers' purchasing decisions; and (iv) there is a likelihood of injury to Weruva in terms of lost profits, loss of market share, loss of good will, and other factors.

### The Evidence Will Establish that Pets Global's Executives Used Their Own Understanding of the Soft Enforcement of State and Federal Labeling Guidelines to Mislead Consumers and Gain an Unfair Advantage in the Pet Food Marketplace

Weruva expects that the evidence will establish that Pets Global's executives – who themselves have a wide degree of experience in the pet food industry – have a unique understanding of the soft enforcement of FDA, FTC, AAFCO, and other federal and state labeling guidelines related to the sale of pet foods.  Based on the soft enforcement of these guidelines, Pets Global engaged in a marketing and labeling campaign that contained a host of false, deceptive, material, and injurious statements that were designed to mislead consumers and harm Pets Global's competitors.  The evidence will establish not only that Pets Global made false representations regarding its products in an effort to mislead and confuse consumers and gain an unfair advantage in the pet food market, but also that even after state regulators notified

Pets Global that its labels were unlawful, Pets Global continued to distribute products that contained the offending labels throughout the marketplace and failed to replace offending labels on products that were already in distribution.

**The Evidence Will Establish that Pets Global Made False Claims**
**Regarding Medical Benefits Associated with its Cat Food Products**

Weruva expects that the evidence will establish that Pets Global has made false claims about medical benefits associated with its cat food products.  More specifically, Weruva expects that the evidence will establish that Pets Global has advertised, both in its marketing material, and on its cans of cat food, that its products "PREVENT URINARY TRACT INFECTION," "SUPPORT URINARY TRACT HEALTH," and help cats to "maintain healthy growth and eyesight."  It cannot be disputed that Pets Global distributed cans of cat food products that contained labels on which these dubious claims appeared.  Weruva expects to establish that Pets Global made these claims without first obtaining scientific or medical evidence to substantiate these claims, and continued to distribute products that contained these claims even after Pets Global was put on notice that the claims were misleading and violated federal and state labeling guidelines.

**The Evidence Will Establish that Pets Global Made False and**
**Misleading Claims Regarding the Source of its Products and Their Ingredients**

Weruva expects that the evidence will establish that Pets Global made false and misleading claims regarding the source of its pet food ingredients, and where its products are manufactured.  Pets Global manufactures its cat food using the same third party facility in Thailand that Weruva uses.  In the aftermath of a pet food recall in 2007 that was linked to an ingredient sourced in China, consumers and pet stores began to scrutinize ingredients from China and other parts of Asia, including Thailand.  Weruva will offer evidence that it undertook great

efforts to educate distributors, stores, and customers about the safety procedures used in its

facilities in Thailand.  Weruva also expects to establish that, in light of the scrutiny surrounding

Asian made products, Pets Global falsely represented on the labels of its products that its country

of origin is the United States, and that its products are a "Product of USA."  Pets Global made

these claims notwithstanding the fact that its products are actually manufactured in Thailand.

Similarly, Weruva expects that the evidence will also establish that Pets Global has made claims

that it "do[es] not use any ingredients from China," when in fact Pets Global sources some of its

ingredients from Chinese sources.

Weruva also expects that the evidence will establish that Pets Global advertises its

products as being edible by humans, when in fact, they are not.  It cannot be disputed that Pets

Global sold products that contained labels which identified Pets Global's products as "HUMAN

GRADE PRODUCT" that is "MANUFACTURED BY HUMAN CONSUMPTION

MANUFACTURER."  Pets Global also advertised that "Fussie Cat delivers the highest quality

Human Grade Products."   Weruva expects to establish that, despite these claims, Pets Global's

products contain ingredients that are not fit for human consumption and that any claims to the

contrary are literally false.  Weruva also expects that the evidence will show that Pets Global

makes false and misleading claims about its products' ingredients.  Specifically, Weruva expects

to establish that Pets Global under reported the ash content contained in its products (because ash

is believed by many to be linked to certain urinary tract problems) and failed to properly disclose

its use of Menadione Sodium Bisulfite Complex, a controversial synthetic vitamin K analog.

### The Evidence Will Establish that Pets Global Made False and Misleading Claims that Compared its Products to Established Brands

Weruva expects that the evidence will establish that Pets Global falsely advertised that its

products are similar to, or associated with, established brands.  Pets Global has falsely claimed

that its tuna is the same product that is served at Subway restaurants and that Subway sells tuna that is manufactured by Pets Global.  Both of these claims are literally false.  Weruva will also establish that Pets Global falsely claimed that its products are manufactured in the "Starkist Plant."  This claim, as well, is literally false.  Weruva will also establish that Pets Global falsely claimed that its canned cat foods are the same products offered by Weruva.  While Weruva and Pets Global manufacture their products using the same third-party facility in Thailand, any claim that Pets Global's products are similar to Weruva's products is misleading and designed to mislead consumers.

### The Evidence Will Establish that Pets Global Made False and Misleading Claims Regarding the Weight of its Products

Weruva expects that the evidence will establish that Pets Global intentionally misleads consumers about the weight of its products.  Weruva will establish that Pets Global circulates cans of cat food that contain only 2.8 ounces (80 grams) of cat food, as opposed to the more popular cat food cans that contain 3.0 ounces (85 grams) of cat food.  Weruva will establish that Pets Global uses cans that are of a similar size to Weruva's and other competitors' 3.0 ounce cans, but that conceal the net weight of its products by failing to place the net weight on the lower third portion of the principal display panel.

### The Evidence Will Establish that Pets Global Made False and Misleading Claims Regarding its Product Formulas

Weruva expects that the evidence will establish that Pets Global made false and misleading claims about its product formulas.  Despite being on the market for nearly two years, every one of Pets Global's labels refers to the product as "New and Improved" regardless of the date of manufacture.

**The Evidence Will Establish that Weruva Has Sustained**
**Damages as a Result of Pets Global's False and Misleading Claims**

Weruva expects that the evidence will show that, as a result of Pets Global's unlawful and misleading advertising of its products: (i) Pets Global earned profits that it would not have otherwise received; and (ii) Weruva lost profits that it would have otherwise received.  Weruva expects that survey evidence will establish that Pets Global's false and misleading claims actually deceived consumers, or at the very least created a tendency that a substantial portion of consumers were deceived.  Weruva expects that survey evidence will establish that consumers were more inclined to purchase Pets Global's products than they were to purchase Weruva's products because Pets Global's products had labels that contained misleading or literally false claims.  Weruva also expects to establish that, in such instances, consumers who purchased Pets Global's products would likely have purchased Weruva's products instead.  Weruva expects to establish that the sales of Pets Global products bearing unlawful labels would not have been consummated had Pets Global's distributors and stores (from which offending cans of Pets Global's products were purchased) known that the subject labels were misleading, contained literally false statements, or both.

Weruva's financial expert, CBIZ Tofias (Carl Jenkins), is expected to testify that Weruva's rate of growth significantly slowed beginning at the end of 2011 and through the first and second quarters of 2012 as a result of Pets Global's offending labels, which were in the market through the majority of 2011, and remain in the market today.  Although Pets Global claims to have abated its conduct beginning in October of 2011, its offending labels remain on store shelves today and Pets Global has refused multiple requests that it recall its misleading and untruthful labels.

a.      Defendant's Summary

*Introduction*

Pets Global submits that the evidence will show that this case, grounded heavily in hyperbole fueled by hysteria, is in fact much ado about very little.  Further, the evidence will establish that both Weruva and Pets Global manufacture – in exactly the same facility in Thailand – and distribute a competing line of "human style" cat food.  Weruva, based in Natick, Massachusetts, commenced its operations in 2006.  Pets Global entered this "unique, ultra-niche"[1] market recently in late 2010.  The most material difference between the parties' products is that a typical small can of Weruva's product sells at retail for $1.25-$1.30, whereas Pets Global's product is typically priced at 89¢, a full 30% less than Weruva's product. Weruva, clearly fearful of legitimate competition from a new market entrant, first turned to the manufacturer in Thailand in the fall of 2010 in an effort to cause it to put Pets Global out of business.  That unfair and underhanded tactic failed.  Weruva thus now turns to the Court House instead of the marketplace in a misguided, ill-conceived and unsupported attempt to maintain its quasi-monopoly market position and pricing power.

Weruva's claims are all based on prior iterations of Fussie Cat labels and marketing materials that have long discontinued and of which Weruva was aware since the fall of 2010.  Since its entry into the U.S. market, Pets Global has engaged in a process of voluntarily improving its labels and marketing materials, in part to ensure compliance with the complicated web of federal and state regulations governing pet food.  Well before this lawsuit, Pets Global voluntarily undertook to deal directly with the regulatory authorities to bring its labels into full

---

[1] Complaint ¶ 8.

compliance with both federal and state regulations.  Nonetheless, Weruva curiously seeks to enjoin Pets Global from doing things it is not doing.  Weruva's claims are, at best, moot.

*Second*, Weruva's request for a mandatory recall of all pet food containing any allegedly violative labels does not pass the straight-face test.  A mandatory recall is simply not an appropriate remedy in this case between competitors alleging only pecuniary harm and at this early stage of the litigation.  There is no claim, nor can there be, of any issue of public health or the health of animals regarding any of Pets  Global's products.

*Third*, due to the dubious and unreliable nature of Weruva's claims and supporting materials, it is difficult to reach any conclusion other than that Weruva is out to defeat its primary competitor in court, a result it apparently could not secure in the free marketplace.

### The Parties are Competitors who Manufacture in the Same Facility

Pets Global, based in North Hollywood, California, was established in 2010 to manufacture and distribute specialty pet foods in the United States.  Pets Global's primary product lines are "Fussie Cat" and "Premium Fussie Cat" moist cat foods, one of which is chicken-based and others of which are tuna-based.  Pets Global's  Fussie Cat products are part of a niche market of what is referred to as "human style" cat food, a term used to denote that the products are produced in a facility that also processes human foods and that the products themselves have some attributes, such as appearance, aroma and texture, of some human foods. The other two principal manufacturers of competing "human style" cat food products are Weruva, the plaintiff in this action, and a third company that manufactures a product line known as "Tiki Cat".

All of Pets Global's Fussie Cat cat food products as well as Weruva's products, are processed and packaged by Southeast Asian Packaging and Canning Ltd. at its factory in Samut

Prakarn, Thailand, which is near Bangkok on the Gulf of Thailand.  The same factory also produces human food, including frozen seafood products, canned and pouch seafood products, including canned tuna, and canned and pouch chicken products that are shipped internationally, including into the United States.

Weruva's products are manufactured in the same plant as Pets Global's, which plant Weruva states, on its website, is "a state of the art human food manufacturing facility."  Weruva claims prominently on its product label that its product is "Made in a Human Facility."  In fact, Weruva claims, on its web site and elsewhere, that its cat food products are "Better Than Human Grade!"; that "We Use Ingredients that People Actually Eat!"; that its cat food products are "The Best Cat Food Under the Sun"; that its cat food products are produced "using the same quality raw ingredients [and] processes that are used to produce human food"; and that its cat food products are "Made in a Human Food Facility" though acknowledging (in very small type) that its products are "For Pets Only".  Despite these claims, based upon a review of the lists of ingredients in Weruva's moist cat food products, Weruva uses many ingredients, including tuna red meat, sometimes referred to as tuna blood meat, trevally, barramundi, shirasu and red bigeye, as well as Menadione Sodium Biosulfate Complex, that people do not normally eat.

Pets Global competes with Weruva.  Based upon a review of the list of ingredients in Weruva's cat food products, the two companies' chicken cat food products are comparable or similar, even though the precise formulations may differ in some respects.  However, the two companies' range of seafood cat food products is quite different in that Pets Global uses only tuna while Weruva uses tuna red meat (a low grade tuna sometimes referred to as tuna blood meat that is commonly used for pet foods) and other fish including tilapia, mackerel, trevally, barramundi, shirasu, red bigeye and sardine.

### *Pets Global's Entry Into the Market and Successfully Undertakes Process to Receive Approval of its Labels by the 45 States that Regulate in this Area*

In August 2010, Pets Global made its first shipment of Fussie Cat products to the United States.  Pets Global planned to distribute its products initially in California, its headquarters and one of five states that does not regulate pet food labeling.  In that first shipment, Pets Global shipped only six containers of product to the U.S. with a label that stated, in small print, "Product of the USA."  Pets Global believed it was justified in making this representation because it is an American company.  After questions were raised concerning that label, Pets Global stopped all further shipments of Fussie Cat and retrieved a number of containers of its product which had not yet been released for distribution back to the factory in Thailand for relabeling to state "Made in Thailand."

Pets Global made its second shipment of Fussie Cat products to the U.S. in early January, 2011.  Throughout the remainder of 2011, as Pets Global expanded its distribution network, it worked with regulators in 45 states to obtain regulatory approval of its labels.  As a result of this process, Pets Global made some other changes to its labels.  For example, it changed a reference to "Prevents Urinary Tract Disease," to "Supports Urinary Tract Health."  The final iteration of the Fussie Cat label, which Pets Global has used continuously since November 2011, has received written approval from all 45 states that regulate pet food labeling.

Pets Global's distributors typically turn over their inventory of "Fussie Cat" and receive their next shipment every 30 days and, therefore, with nearly 24 months having passed since the original shipment, it is highly unlikely that there is anything more than a trivial number of the original labeled product available for sale.  Indeed, with approximately nine (9) months having passed since Pets Global adopted its current label, it is extremely unlikely that anything but product with the current label are available for sale.

Pets Global also operates a website of its Fussie Cat brand.  The website contained much of the same information that appeared on the Fussie Cat labels.  The website also stated that Fussie Cat products contain no ingredients from China.  Pets Global's manufacturer in Thailand represented to it that it did not source any ingredients from China.   As a result of Weruva's allegation that Pets Global's products do contain ingredients from China, Pets Global contacted its manufacturer to confirm its previous representation.  The manufacturer advised Pets Global that it does, in fact, source several ingredients from China, as does Weruva.  Indeed, based upon a review of the ingredients in Weruva's moist cat food products on May 23, 2012, Weruva's cat food products also contain various ingredients sourced from China, including dicalcium phosphate, taurine, manganese sulfate, copper sulfate, carrot and green peas.  Pets Global immediately removed any reference to its products not containing ingredients from China from its marketing materials and took down its website.

### *Pets Global's Products are Marketed as Pet Food*

Pets Global's Fussie Cat products have "PET FOOD ONLY" stamped prominently on the bottom of can and each can shows, very prominently, a stylized image of a cat.  Pets Global has always marketed and disclosed its products as cat food.  In addition to marketing every can as "Pet Food Only", and the prominent placement of a photo of a cat on each label, each can of Pet's Global cat food contains the following chart:

FEEDING INSTRUCTIONS

| | |
|---|---|
| Kittens: | Feed up to twice the adult amount daily |
| Adult Cats: | Feed 1 can daily per 4lbs of body weight |
| Pregnant Cats: | Feed 1.25 can daily per 4lbs of body weight |

Lactating Cats:          Feed 3 cans daily per 4lbs of body weight

Fresh water should be available at all times.

### *The Parties Use of Menadione Sodium Bisulfate Complex*

Menadione Sodium Bisulfate Complex ("Menadione"), which is also known as synthetic Vitamin K-3, is used in Pets Global's Fussie Cat products and Weruva's products.    This is a common ingredient in pet food products, as recognized by the United States Food and Drug Administration and it is noted on Fussie Cat labels.  Moreover, based upon a eview of the lists of ingredients in Weruva's cat food products Menadione Sodium Bisulfate Complex is also an ingredient in many of Weruva's cat food products, including "Outback Grill", "Marbella Paella", "Asian Fusion", "Mack and Jack", "Polynesian BBQ", "Meow Luau", "Mediterranean Harvest" and "Mideast Feast", even though it is not an ingredient that people actually eat, as advertised by Weruva.  Pets Global fully discloses its use of Menadione in its products.

### *Weruva's Remaining Allegations are Equally Baseless*

Pets Global's cans of Fussie Cat cat food contain, and are clearly labeled to contain, a net weight of 80 grams (2.82 oz.).  The only FDA regulation, 21 C.F.R. § 501, which relates to the declaration of net weight on the label requires that the declaration appear "within the bottom 30 percent of the area of the label panel", which it does on all Fussie Cat moist cat food products.

Weruva alleges that Pets Global's Fussie Cat products have more than 2.0% ash, as set forth in the Guaranteed Analysis on each can of Fussie Cat cat food.  This allegation is false.  In May, 2011, Pets Global requested that the factory where the products are produced submit samples of Fussie Cat cat food products for analysis by an independent laboratory.  Those reports, which are the best evidence available to Pets Global, show that (a) Fussie Cat tuna whole

meat with shrimp in jelly contains 0.98% ash, (b) Fussie Cat tuna whole meat with crab surimi in jelly contains 0.94% ash.

Weruva makes certains claims to the effect that various AAFCO guidelines and certain state regulations, including 330 Code of Massachusetts Regulations 13.06(1), limit the amount of moisture in pet food to 78%.  Weruva is incorrect.  The actual regulation, in this case 330 CMR 13.06(1), provides:  "The maximum moisture in all pet foods shall be guaranteed and shall not exceed 78.00% or the natural moisture content of the constituent ingredients of the product, whichever is greater.  Pet foods such as those consisting principally of stew, gravy, sauce, broth, juice or a milk replacer which are so labeled, may contain moisture in excess of 78.00%."  Accordingly, the FDA advisory on the subject ,(http://www.fda.gov/animalveterinary/resourcesforyou/ucm047113.htm), provides that "[u]nder AAFCO regulations, the maximum percentage moisture content for a pet food is 78%, except for products labeled as a "stew," "in sauce," "in gravy," or similar terms.  The extra water gives the product the qualities needed to have the appropriate texture and fluidity."  This is why all Pets Global Fussie Cat products with a moisture content greater than 78.0% clearly state that they are "in gravy" or "in aspic", or words to that effect.

A review of the "Guaranteed Analysis" and Average Analysis for each of Weruva's canned cat food products, as shown on its web site on May 23, 2012, reveals the following data:

|  | Guaranteed Analysis | Average Analysis |
| --- | --- | --- |
| Weruva Product | Moisture (max) | Moisture |
| Paw Lickin' Chicken – With Chicken in Gravy | 85% | 79% |
| Grandma's Chicken Soup – With Chicken and Pumpkin | 85% | 82% |
| Funky Chicken Chicken Soup – Chicken Soup with Pumpkin | 85% | 80% |
| Nine Liver – With Chicken and Chicken Liver in Gravy | 85% | 80% |
| Green Eggs and Chicken – With Chicken, Egg and  Greens in Gravy | 85% | 80% |

| | | |
|---|---|---|
| Peking Ducken – With Chicken and Duck in Gravy | 85% | 81% |
| On the Cat Wok – With Chicken and Beef in Pumpkin Soup | 85% | 80% |
| Steak Frites – With Beef and Pumpkin in Gravy | 85% | 80% |
| Outback Grill – With Trevally and Barramundi | 85% | 81% |
| Marbella Paella – With Mackerel and Shrimp | 83% | 80% |
| Asian Fusion – With Tuna and Shirasu | 83% | 79% |
| Mack and Jack – With Mackerel and Grilled Skipjack | 82% | 79% |
| Polynesian BBQ – With Grilled Red Bigeye | 82% | 79% |
| Meow Luau – With Mackerel and Pumpkin | 84% | 78% |
| Mediterranean Harvest – With Tuna and Veggies in Gravy | 84% | 78% |
| Mideast Feast – With Grilled Tilapia in Gravy | 84% | 78% |

Therefore, Weruva's products have significantly more moisture content than do Pets Global's products.

At no time has Pets Global authorized any Pets Global representative to claim that Pets Global sells tuna or any other products to Subway although both parties' products are manufactured in the same plant that processes tuna for the Subway restaurant chain.  In addition, although a review of the labels on Weruva's cat food products reveal that they have many of the same ingredients as Pets Global's Fussie Cat cat food products, as a matter of policy Pets Global does not compare or attempt to compose the formulations of or ingredients in its Fussie Cat cat food products with the products of any other manufacturer.

At no time has Pets Global authorized any Pets Global representative to claim that Pets Global sells tuna or any other made in a "Starkist plant."   Weruva relies on a picture of a handmade banner in an undisclosed pet store for this allegation.  Neither the apparently handmade banner just below the "Instinct" brand cat foods that reads "Made in the Starkist plant" or the "New Premium Fussie Cat" banner, showing a price of .89¢, were created, provided or authorized by Pets Global and I have never seen either of them before.

***Weruva Cannot Prove Any Damages were Caused by any act or omission by
Pets Global and Its Damages Claim is Hopelessly Speculative and Specious***

Weruva cannot establish that it has suffered any damages or incurred any additional costs which were either directly or proximately caused by any act, omission or statement by Pets Global.  In order to receive any damages for false advertising under the Lanham Act, Weruva must prove that a statement by Pets Global was both false and caused actual consumer confusion or deception and were the cause in fact for Weruva to lose sales or resulted in a quantifiable loss of good will.  Pets Global submits that Weruva cannot make this showing and is not entitled to recover any damages in this matter.

Weruva cannot establish and has not attempted to establish or claim that it has incurred any damage control costs of any kind.  In addition, Weruva cannot establish and has not attempted to establish that Pets Global acted willfully or in bad faith in a manner which would entitle Weruva to assert a claim for disgorgement of any profits made by Pets Global of which there have been none to date.

Finally, Weruva cannot even hope to establish any damages based on a claim of lost sales or quantifiable loss of goodwill  because contrary to Weruva's contentions, Weruva's sales have increased exponentially even in the face of the most severe recession in many decades.

**iii.**    **Statement of Facts**

a.      Stipulated Facts[2]

1.      Weruva and Pets Global are pet food manufacturers and direct competitors that compete with one another and sell similar pet food products.

---

[2] Counsel for the parties have conferred as to what facts may be stipulated to at trial.  As discovery in this case has only just begun, it is possible that further facts will be stipulated to before trial.

2.     Weruva and Pet Global's cat food products are both produced in the same third party facility located in Thailand.  The facility in Thailand is responsible for applying Weruva's and Pets Global's labels to their respective cans.

b.     Contested Factual Issues Asserted By Weruva

1.     Whether Pets Global has advertised that it sells the same product as Weruva, at a lower price.

2.     Whether Pets Global has made false and misleading claims that its products originate from the same plant as Weruva's products.

3.     Whether Pets Global has made false and misleading claims that its products originated from the United States.

4.     Whether Pets Global has made false and misleading claims that its products provide medical benefits.

5.     Whether Pets Global has made false and misleading claims that its products "PREVENT URINARY TRACT INFECTION," "SUPPORT URINARY TRACT HEALTH," and help to "maintain healthy growth and eyesight."

6.     Whether Pets Global had any scientific or medical support for any claim that its products provide medical benefits.

7.     Whether Pets Global has made false and misleading claims that its products are edible by humans, or are a "HUMAN GRADE PRODUCT, MANUFACTURED BY HUMAN CONSUMPTION MANUFACTURER."

8.     Whether Pets Global's pet foods contain ingredients that are not fit for human consumption.

9.     Whether Pets Global's products contain bonito.

10.    Whether Pets Global has made false and misleading claims that Pets Global "do[es] not use any ingredients from China."

11.    Whether Pets Global sources some if its ingredients for its products from Chinese sources.

12.    Whether Pets Global has made false and misleading claims that its tuna is the same product that is served at Subway restaurants.

13.    Whether Pets Global has made false and misleading claims that the tuna sold by Subway restaurants is Pets Global's tuna.

14.    Whether the species of tuna that Subway and Pets Global use are different.

15.    Whether Pets Global has made claims that its products are manufactured and "made in the Starkist Plant."

16.    Whether the species of tuna that Starkist and Pets Global use are different.

17.    Whether Starkist packs its tuna in the same factory in Thailand that Pets Global uses.

18.    Whether Pets Global has under reported the ash content contained within its products.

19.    Whether Pets Global has failed to disclose its use of Menadione Sodium Bisulfite Complex in its products.

20.    The net weight of Pets Global's products

21.    Whether Pets Global has mislabeled the weight of its cat food products.

22.    Whether Pets Global has changed its pet food formulas since entering the market.

23.    Whether there is a factual basis for Pets Global's claims that its formulas are "New and Improved."

24.     Whether Weruva suffered damages as a result of Pets Global's false and misleading claims.

C.     Contested Factual Issues Asserted by Pets Global

In addition to the contested issues of facts asserted by Weruva, Pets Global presents these additional contested issues of fact:

1.     Whether Weruva uses many ingredients, including tuna red meat (also known as tuna blood meat), trevally, barramundi, shirasu and red big eye as well as Menadione which humans do not normally eat.

2.     Whether Weruva's products have been plagued by quality control problems which have damaged Weruva's reputation and sales.

3.     Whether Weruva's products have been plagued by claims and complaints by consumers as to the negative effect that Weruva's products have on the health and well-being of the consumer's pets which problems have damaged Weruva's reputation and sales.

4.     Whether any act, omission or statement by Pets Global which is actionable under the Lanham Act was either the direct or proximate cause of any damages to Weruva.

5.     Whether Pets Globals labels which have been used since November 2011 and which were approved by all 45 states which regulate the labeling of pet food contain any statement or omission which is or would be actionable under the Lanham Act.

6.     Whether Pets Global accurately markets its products as pet food.

7.     Whether Pets Global made any claim that it buys any tuna from or supplies any tuna to Subway brands.

8.     Whether Pets Global fully discloses its use of Menadione in its products.

9.     Whether Pets Global's cat food products are priced significantly lower than

Weruva's cat food products.

10.     Whether Pets Global Guaranteed Analysis on each can of its Fussie Cat cat food is accurate and has been confirmed by an independent laboratory.

11.     Whether Pets Global ever marketed its products as having the same ingredients as Weruva's products.

12.     Whether Pets Global ever marketed its products as having been made in "the Starkist Plant" or authorized any similar claims.

13.     Whether Weruva, either on its own or in conspiracy with Jana Brands, has engaged in attempted monopolization of the market for "human style" cat food in the United States or other unfair or deceptive acts and practices directed to Pets Global.

14.     Whether Weruva, through its acts or omissions, has waived or is estopped to assert one or more of its claims against Pets Global.

15.     Whether Weruva has engaged in predatory pricing or other unlawful acts in order to maintain its monopoly or quasi-monopoly market position and to harm Pets Global.

**iv.     Jurisdictional Issues**

None.

**v.     Pending Motions**

### a. Weruva's Position

None at this time.  However, Weruva expects that motion practice regarding Pets Global's response to written discovery will be imminently necessary.  Despite this Court's prior instructions that the parties cooperatively engage in discovery, Pets Global has blatantly refused to disclose information that is highly relevant to Weruva's claims in this lawsuit, including:

1.      Communications that took place between Pets Global and David Dzanis, a world renowned pet food labeling expert from January 1, 2008 through the present.

2.      Information concerning the composition, ingredients, nutritional value, and formula of products Pets Global sold in the United States from January 1, 2010 through the present.

3.      Communications concerning the advertising, labeling, and sales of products Pets Global sold in the United States from January 1, 2010 through the present.

4.      Sales information for all Fussie Cat or Premium Fussie Cat products sold in the United States from January 1, 2010 through the present.

5.      Distributor information for all Fussie Cat or Premium Fussie Cat products sold in the United States from January 1, 2010 through the present.

### b.  Pets Global's Position

Pets Global has complied with all applicable rules governing the production of information and documents in response to Weruva's discovery requests.  Weruva recently raised its concern that Pets Global's document production was somehow incomplete and agreed to send Pets Global a letter indicating Weruva's concerns. Instead of proceeding in this agreed-upon manner, Weruva has inserted the above into this document.

Weruva has been advised that much of what it describes above either has been produced, does not exist or is simply not relevant or likely to lead to the discovery of  information relevant to any issue or claim raised by the operative pleadings in this matter.  Indeed, Weruva itself has refused to produce to Pets Global a number of the categories of information that Weruva now asserts  that  Pets Global has failed to produce including  information concerning the composition, ingredients, nutritional value, and formula of Weruva's products.

In addition, Pets Global has advised Weruva that David Dzanis played no role and did not advise Pets Global on the labeling of its Fussie Cat or Premium Fussie Cat products but, instead, was retained to advise Pets Global on labeling for an entirely unrelated line of dog food products.

**vi.   Legal Issues**

### a.   Weruva's Statement of Legal Issues

1.      Whether Pets Global's conduct, as a described above, constitutes a violation of the Lanham Act, such that Weruva should be entitled to recovery of its lost profits.

2.      Whether Pets Global's conduct was willful, such that Weruva should be entitled to its attorneys' fees and multiple damages as proscribed by law.

### b.   Pets Global's Statement of Legal Issues

1.      Whether Weruva is barred from seeking equitable relief by its own unclean hands and inequitable conduct.

2.      Whether Weruva has waived, in whole or in part, one or more of its claims against Pets Global.

3.      Whether Weruva is estopped by its own conduct or that of others for whose conduct it is legally responsible from pursuing one or more of its claims against Pets Global.

4.      Whether one or more of Weruva's claims is barred by the doctrine of laches.

5.      Whether or not Weruva can establish any damages of any kind were either directly or proximately cause by any act, statement or omission by Pets Global which were actionable under the Lanham Act.

**vii.**   **Amendments to Pleadings**

a.   Pets Global's Position

Based upon certain evidence only recently received and documents recently produced by Weruva, which will be the subjects of questioning at the forthcoming depositions of Weruva and Jana Brands personnel, Pets Global is considering and analyzing whether to seek leave to add a counterclaim against Pets Global and a third-party claim against Jana Brands for one or more of (a) attempted monopolization of the market for human style cat food in the United States; (b) predatory pricing; (c) conspiracy to restrain trade; (d) tortuous interference with Pets Global's contractual relationships and advantageous business relationships; (e) defamation or other injurious falsehoods designed and intended to injure, and which in fact caused injury to, Pets Global; or (f) unfair or deceptive acts and practices in violation of, *inter alia*, Mass. Gen. Laws c. 93A and cognate statutes in other states.

**viii.**   **Additional Matters to Aid in Disposition of Action**

None at this time.

**ix.**   **Length of Jury Trial**

**a.   Weruva's Position**

The Plaintiff estimates that a jury trial will take approximately five to seven days.

**b.   Pets Global's Position**

Pets Global estimates that a trial in this matter will take four days.

**x.**   **Trial Witnesses**

Discovery has not been completed in this matter.  In fact, it has barely commenced. Accordingly, the parties hereby jointly reserve the right to supplement or eliminate the list of potential trial witnesses in this matter.  The parties will exchange, with the exception of

witnesses who may be called as rebuttal witnesses, final witness lists prior to the start of trial in this matter.

a.      Plaintiff's Fact Witnesses

1.  David Forman, President, Weruva International, Inc., 17 Mercer Road, Natick, MA  01760.

2.  Anthony Guidice, Vice President, Weruva International, Inc., Brooklyn, NY.

3.  Michael Directo, Sales Manager, Weruva International, Inc., San Diego, CA.

4.  Ward Reynolds, Regional Sales Manager, Weruva International, Inc., Inwood, West Virginia.

5.  Daniel Wangerin, Regional Sales Manager, Weruva International, Inc., Atlanta, GA.

6.  Bruce C. Levine, 75 Second Avenue, Suite 700, Needham, MA  02494.

7.  Howard Woolf, Jana Brands, Inc., 17 Mercer Road, Natick, MA  01760.

8.  Steve Forman, Jana Brands, Inc., 17 Mercer Road, Natick, MA  01760.

9.  Daniel Hereford, President, Pets Global, Inc., Palmdale, CA.

10. Henry Lam, Vice President, Pets Global, Inc., Tampa, FL.

11. Raymond Lee, Chief Executive Officer, Pets Global, Inc., resident of Singapore.

12. Person with the most knowledge, Pets Global, Inc.[3]

13. Joseph Hereford, 1742 Fairdale Avenue, Escondido, CA  92027.  Plaintiff expects to introduce portions of Mr. Hereford's deposition testimony at trial.

---

[3] Weruva has not yet conducted the 30(b)(6) deposition of Pets Global and therefore reserves its right to call as a witness at trial any person designated as the person with the most knowledge for any of the topics identified in the deposition notice issued to Pets Global.

14. David Dzanis, 16256 Ravenglen Road, Santa Clarita, CA 91387. Plaintiff expects to introduce portions of Mr. Dzanis's deposition testimony at trial.

15. Darryl Abrams, Party Animal Pet Food, Manhattan Beach, California.

16. Jim O'Brien, USPet Nutrition, LLC, Boston, Massachusetts.

17. Susan Thixton, Tampa, Florida.

18. Alissa Wolf, Philadelphia, Pennsylvania.

19. Tracie Hotchner, Vermont.

20. Plaintiff reserves the right to call any of the fact witnesses listed on Defendant's witness list, and to seasonably supplement or amend this witness list up through the time of trial.

b.   <u>Plaintiff's Expert Witnesses</u>

1.   Carl F. Jenkins, CBIZ Tofias, 500 Boylston Street, Boston, MA 02116.

2.   Robert Stankus, CBIZ Tofias, 500 Boylston Street, Boston, MA 02116.

3.   Eli Seggev, Ph.D., Keegan & Company LLC, 350 Theodore Fremd Avenue Rye, New York 10580.

4.   Plaintiff reserves the right to call any of the expert witnesses listed on Defendant's witness list, and to seasonably supplement or amend this witness list to identify any rebuttal expert(s).

c.   <u>Defendant's Fact Witnesses</u>

1.   Henry Lam, Vice President of Pets Global , c/o Pets Global's offices at 15616 South Figueroa Street, Gardena, California 90248

2.   Daniel Hereford, President of Pets Global, c/o Pets Global's offices at 15616 South Figueroa Street, Gardena, California 90248

3.      Raymond Lee, Chief Executive Officer of Pets Global, c/o Pets Global's offices at 15616 South Figueroa Street, Gardena, California 90248

4.      Steven Ma, Certified Public Accountant, 328 S. Atlantic Blvd., Suite 208, Monterey Park, California 91754

d.      <u>Defendant's Expert Witnesses</u>

Pets Global has not yet retained any expert witnesses in connection with this matter. Pursuant to the Scheduling Order (ECF No. 37) entered by the Court on July 3, 2012, Pets Global's expert designation will be made and served by August 20, 2012.

**xi.     Trial Exhibits**

Discovery has not been completed in this matter and the parties hereby jointly reserve the right to supplement the list of potential trial exhibits in this matter.  The parties will exchange, with the exception of exhibits which  may be used in cross-examination or in rebuttal, final exhibit lists prior to the start of trial in this matter.

**a.  Weruva's Statement of Trial Exhibits**

A.      Fussie Cat label (PGI0000014)

B.      Fussie Cat labels (PGI0000030; PGI0000146)

C.      Fussie Cat labels (PGI0000031; PGI0000147)

D.      Fussie Cat labels (PGI0000073-PGI0000076)

E.      Fussie Cat's website pages (PGI0000077-PGI0000083)

F.      Fussie Cat website pages (WI00755-WI00757)

G.      Pets Global organizational chart (PGI0000533-PGI0000534)

H.      Fussie Cat marketing brochure (PGI0000535-PGI0000544)

I.      Fussie Cat labels (WI00002)

J.      Fussie Cat marketing brochure (WI00003)

K.      Fussie Cat marketing brochure (WI00004)

L.      Fussie Cat marketing brochure (WI00005)

M.      Photograph of Fussie Cat cans (WI00006)

N.      Photograph of Fussie Cat cans (WI00007)

O.      Photograph of Fussie Cat cans (WI00008)

P.      Photograph of Fussie Cat cans (WI00009)

Q.      Photograph of Fussie Cat cans (WI00010)

R.      Photograph of Fussie Cat cans (WI00011)

S.      Photograph of Fussie Cat cans (WI00012)

T.      Photograph of Fussie Cat cans (WI00013)

U.      Photograph of Fussie Cat cans (WI00014)

V.      Photograph of Fussie Cat cans (WI00015)

W.      Photograph of Fussie Cat cans (WI00016)

X.      Photograph of Fussie Cat cans (WI00017)

Y.      Fussie Cat Facebook profile (WI00018)

Z.      Fussie Cat marketing brochure (WI00019-WI00027)

AA.     Fussie Cat marketing brochure (WI00061-WI00074)

BB.     Photograph of can of Fussie Cat and July 10, 2012 sales receipt (WI00075)

CC.     Daniel Hereford's PGI business card (WI00060)

DD.     Photograph of "Made in the Starkist plant" sign (WI00057)

EE.     March 27, 2012 e-mail from Dassakorn to Calvin Lee (PGI0000065)

FF.     March 31, 2011 letter from Steven Brooks to Daniel Hereford (PGI0000066-
        PGI0000068)

GG.     April 8, 2011 memorandum from Raymond Lee to Pets Global sales
        representatives, distributors, and employees (PGI0000071)

HH.     April 14, 2011 letter from Karla MacCary to Steven Brooks (PGI0000069-
        PGI0000070)

II.     January 21, 2011 e-mail from Donna Dicesare to Daniel Hereford
        (PGI0000414-PGI0000415)

JJ.     March 10, 2011 e-mail from Donna Dicesare to Daniel Hereford (PGI0000300-
        PGI0000304)

KK.     March 26, 2011 e-mail from Daniel Hereford to Donna Dicesare (PGI0000427-
        PGI0000437)

LL.     March 30, 2011 e-mail from Donna Dicesare to Daniel Hereford (PGI0000320-
        PGI0000330)

MM.     March 31, 2011 e-mail from Daniel Hereford to Donna Dicesare (PGI0000449-
        PGI0000464)

NN.     April 1, 2011 e-mail from Donna Dicesare to Daniel Hereford (PGI0000306-
        PGI0000319)

OO.     April 1, 2011 e-mail from Daniel Hereford to Donna Dicesare (PGI0000465-
        PGI0000479)

PP.     August 28, 2011 e-mail from Liz Higgins to Daniel Hereford (PGI0000267-
        PGI0000270)

QQ.     August 29, 2011 e-mail from Liz Higgins to Daniel Hereford (PGI0000265-
        PGI0000266)

RR.     September 17, 2011 e-mail from Daniel Hereford to Liz Higgins (PGI0000518-
        PGI0000532)

SS.     September 23, 2011 e-mail from Liz Higgins to Daniel Hereford (PGI0000272-
        PGI0000273)

TT.     September 23, 2011 e-mail from Daniel Hereford to Liz Higgins (PGI0000514-
        PGI0000517)

UU.     September 26, 2011 e-mail from Liz Higgins to Daniel Hereford (PGI0000279-
        PGI0000282)

VV.     October 18, 2011 e-mail from Daniel Hereford to Liz Higgins (PGI0000495-
        PGI0000509)

WW.     October 21, 2011 e-mail from Liz Higgins to Daniel Hereford (PGI0000283-
        PGI0000286)

XX.     November 8, 2011 e-mail from Daniel Hereford to Liz Higgins (PGI0000487-
        PGI0000489)

YY.     November 17, 2011 e-mail from Daniel Hereford to Liz Higgins (PGI0000480-
        PGI0000484)

ZZ.     China ingredients list (WI00028)

AAA.    USDA Countries/Products Eligible for Export to the United States (WI00029)

BBB.    United States Pharmacopeial Convention, Inc. Material Safety Data Sheet
        (Menadione) (WI00030-WI00034)

CCC.    United States Pharmacopeial Convention, Inc. Certificate (Menadione) (WI00035-WI00036)

DDD.    ASPCA news article (WI00037-WI00038)

EEE.    About.com biography for Alissa Wolf (WI00039)

FFF.    About.com news article written by Alissa Wolf (WI00040-WI00041)

GGG.    About.com news article written by Alissa Wolf (WI00042-WI00043)

HHH.    About.com news article written by Alissa Wolf (WI00044-WI00045)

III.    News article written by Sabine Contreras (WI00046)

JJJ.    News article about Menadione (Vitamin K3) (WI00047)

KKK.    News article written by Susan Thixton (WI00048-WI00050)

LLL.    November 21, 2010 e-mail from David Forman to Say Kim (WI00053-WI00054)

MMM.    November 29, 2010 e-mail from Steve Forman to David Forman (WI00076-WI00077)

NNN.    November 29, 2010 e-mail from Steve Forman to David Forman (WI00078-WI00080)

OOO.    December 1, 2010 e-mail from Steve Forman to Joseph Kiang (WI00081-WI00082)

PPP.    December 4, 2010 e-mail from Joseph Kiang to David Forman (WI00083-WI00088)

QQQ.    December 4, 2010 e-mail from Anthony Guidice to David Forman (WI00089-WI00094)

RRR.    December 14, 2010 e-mail from Apichai Sriarunluck to Steve Forman (WI00095-WI00102)

SSS.    January 27, 2011 e-mail from Apichai Sriarunluck to David Forman (WI01391-WI01392)

TTT.    March 22, 2011 e-mail from Steve Forman to Joseph Kiang (WI00103-WI00105)

UUU.    Weruva customer inquiries about Menadione (WI00108-WI00181)

VVV.    Weruva customer inquiries about Thailand (WI00189-WI00364)

WWW.   Weruva's marketing material information about manufacturing process (WI00182)

XXX.    Weruva's marketing material information about manufacturing process (WI00183-WI00188)

YYY.    Pet Dealer News article about Weruva (WI10393)

ZZZ.    New York Post article about Weruva (WI01394)

AAAA.   Pets Global 10/1/2011-6/30/2012 Profit and Loss Statement (PGI0000225)

BBBB.   Pets Global September 30, 2010 Financial Statements (PGI0000226-PGI0000232)

CCCC.   Pets Global September 30, 2011 Financial Statements (PGI0000226-PGI0000232)

DDDD.  Pets Global 2009 Form 1120 (PGI0000240-PGI0000251)

EEEE.   Pets Global 2010 Form 1120 (PGI0000252-PGI0000264)

FFFF.    Forman Industries, Inc. 2008-2009 Consolidated and Combined Financial Statements (WI01109-WI01135)

GGGG.   Weruva 2009-2010 Financial Statements (WI01136-WI01148)

HHHH.   Weruva 2010-2011 Financial Statements (WI01149-WI01161)

IIII.       Weruva's sales data (1/1/2012-5/31/2012) (WI01162-WI01163)

JJJJ.      Pets Global's import data (7/20/2011-6/18/2012) (WI01164-WI01166)

KKKK.   Weruva Cat Food Product Unit and Dollar Sales By Item (1/1/2006-5/31/2012)

          (WI01167-WI01390)

### b.  Pets Global's Statement of Trial Exhibits

A.      PGI 14-17
B.      PGI 49-55
C.      PGI 57-59
D.      PGI 61-64
E.      PGI 65
F.      PGI 71
G.      PGI 73-76
H.      PGI 88
I.      PGI 90-93
J.      PGI 94-100
K.      PGI 101-104
L.      PGI 105-224
M.      PGI 225-226
N.      PGI 227-239
O.      PGI 240-251
P.      PGI 252-264
Q.      PGI 463-464
R.      PGI 520-530
S.      WI 76-77
T.      WI 77-80
U.      WI 81-82
V.      WI 83-88
W.      WI 89-102
X.      WI 103-105
Y.      WI 106-107
Z.      WI 108
AA.     WI 109
BB.     WI 122-123
CC.     WI 126
DD.     WI 143
EE.     WI 145-147
FF.     WI 159
GG.     WI 182

HH.    WI 184
II.    WI 185
JJ.    WI 186
KK.    WI 194-195
LL.    WI 204-205
MM.    WI 215
NN.    WI 306
OO.    WI 316-317
PP.    WI 352-353
QQ.    WI 365
RR.    WI 368
SS.    WI 392
TT.    WI 428
UU.    WI 522
WW.    WI 967
XX.    WI 968
YY.    WI 969
ZZ.    WI 1002
AAA.    WI 1035
BBB.    WI 1044
CCC.    WI 1109-1135 (redactions removed)
DDD.    WI 1136-1148
EEE.    WI 1149-1161
FFF.    WI 1162-1163
GGG.    WI 1167-1169
HHH.    WI 1170-1390
III.    WI 1391-1392

xii.    Parties Joint Statement on Objections to Trial Exhibits

Discovery has not yet completed in this matter and, in fact, has only recently begun.  The

parties require discovery to prepare any evidentiary or other objections to any potential trial

exhibits in this matter.  Therefore, the parties jointly reserve their respective objections until the

time of trial.

In addition, Pets Global incorporates by reference herein its specific objections to the

specific documents, testimony or other purported "evidence" that were raised in Defendant's

Motion to Strike and/or Disregard Certain Affidavits and Documents Proffered by Plaintiff

(ECF No. 16)  and supporting memorandum (ECF No. 17) which objections are hereby

preserved should Weruva seek to introduce any of these documents, testimony or other purported

"evidence" into evidence during any trial of this matter.

Dated: July 23, 2012

WERUVA INTERNATIONAL, INC.
By its attorneys,

*/s/ Charles F. Rodman*
Charles F. Rodman, BBO# 641216
rodman@rodmanlawgroup.com
Matthew J. Wayne, BBO# 674923
wayne@rodmanlawgroup.com
Rodman Law Group LLC
36 Washington Street, Suite 190
Wellesley Hills, MA 02481
(781) 237-5500 [P]
(781) 237-5550 [F]

Dated: July 23, 2012

PETS GLOBAL, INC.
By its attorneys,

*/s/ Larry L. Varn*
Larry L. Varn (BBO# 508130)
lvarn@pierceatwood.com
Jeffrey E. Francis (BBO# 639944)
jfrancis@pierceatwood.com
Pierce Atwood LLP
100 Summer Street, Suite 2250
Boston, MA 02110
(617) 488-8136  Telephone
(617) 824-2020  Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Pretrial Memorandum was served upon the attorney of record for all parties via the Court's electronic filing system on July 23, 2012.

*/s/ Matthew J. Wayne*
Matthew J. Wayne