UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WERUVA INTERNATIONAL, INC., ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> PETS GLOBAL, INC. d/b/a Fussie Cat and ) <br> Premium Fussie Cat, ) <br> ) <br> Defendant ) <br> ) | CASE NO.: 1:12-cv-10447 (WGY) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
EMERGENCY MOTION TO COMPEL DEFENDANT'S DISCLOSURE
OF FINANCIAL AND SALES INFORMATION AND TO EXTEND THE
DEADLINE FOR DISCLOSURE OF PLAINTIFF'S FINANCIAL EXPERT**

The Plaintiff, Weruva International, Inc. ("Weruva"), respectfully submits this Memorandum of Law in Support of Weruva's Emergency Motion to Compel Defendant's Disclosure of Financial and Sales Information and to Extend Deadline for Disclosure of Plaintiff's Financial Expert. Weruva's Motion should be **ALLOWED** on the following grounds:

(1) Weruva, a manufacturer of "human style" pet food, filed this lawsuit against Pets Global, Inc. ("PGI"), a direct competitor of Weruva, because PGI engaged in an unlawful and misleading marketing scheme whereby it made literally false statements on its products' labels and in its marketing materials in an improper effort to gain an unfair competitive advantage in the domestic pet food marketplace.

(2) In addition to injunctive relief, Weruva seeks to recover damages for: (i) lost profits Weruva would have received were it not for PGI's unlawful and misleading marketing campaign; and (ii) profits earned by PGI as a result of its unlawful and misleading marketing campaign.

(3)     PGI has flatly refused to disclose highly relevant information concerning its domestic sales of cat food products to Weruva's counsel.  Because Weruva's claim for damages is <u>inexorably</u> linked to this information – and because Weruva's financial expert needs this information to prepare a complete computation and analysis of Weruva's damages – the Court should compel the disclosure of this data.

(4)     Moreover, in light of the fact that Weruva is under an obligation to disclose its financial expert's written report on or before July 31, 2012, the Court should briefly extend the deadline for Weruva to disclose the written report of its financial expert to take place within five (5) business days following PGI's disclosure of information related to PGI's domestic sales of cat food products.

In further support of its Motion, Weruva has submitted an affidavit of its counsel and further states the following:

**I.     BACKGROUND**

**A.  The lawsuit.**

Weruva is a pioneer in the "human style" pet food market.  Since 2006, some four years before PGI claims to have entered the United States pet food marketplace, Weruva has sold its unique and creative brand of pet food to independent pet stores (mom and pop) throughout the United States and Canada.  Weruva's unique and ultra-niche "human style" of food is limited to very few manufacturers in an industry that otherwise contains hundreds of brands.  PGI, on the other hand, claims only to have begun its United States operations in 2010 and sells its cat food under the name "Fussie Cat" and/or "Premium Fussie Cat."  The gravamen of this lawsuit

involves Weruva's claim that PGI has violated the Lanham Act by making a series of literally false and misleading claims to consumers about its products.

In an effort to unfairly infringe upon Weruva's own market share, PGI has touted its products as being better and cheaper than Weruva's products using a host of literally false and misleading claims about its products. PGI's claims are undeniably intended to mislead consumers and harm competitors, such as Weruva. The deceptive marketing tactics that PGI has employed include false and misleading claims that PGI's products: (i) provide unsubstantiated medical benefits; (ii) are "Made in the U.S.A." when they are in fact made in Thailand; (iii) do not contain ingredients from China when they in fact do; (iv) are "human products" that are "fit for human consumption; and (v) are comprised from "New and Improved" formulas. PGI has also made misleading statements that its products are similar to established brands, such as Weruva, Subway, and Starkist, failed to properly disclose that its products contain Menadione Sodium Bisulfite Complex, a synthetic vitamin K analog, and underreported the ash content of its products – an ingredient that is <u>actually linked</u> to urinary tract problems.

PGI's literally false and misleading claims appear throughout its marketing materials and on thousands of its cat food cans. Thus, Weruva expects that an overwhelming majority of the evidence at trial will establish that: (i) PGI made a series of false or misleading statements about pet food products that traveled through interstate commerce; (ii) these false or misleading statements actually deceived consumers, or at the very least created a tendency that a substantial portion of consumers were deceived; (iii) such deception is material and likely to influence consumers' purchasing decisions; and (iv) there is a likelihood of injury to Weruva in terms of lost profits, loss of market share, loss of good will, and other factors.

### B. Weruva's retention of a financial expert to evaluate its economic damages.

The economic damages that Weruva seeks to recover at trial include: (i) lost profits that Weruva would have received were it not for PGI's unlawful and misleading advertising and labeling of its products; and (ii) profits earned by PGI as a result of its unlawful and misleading advertising and labeling of its products. Weruva has retained and disclosed a financial expert, CBIZ Tofias, Carl F. Jenkins, to provide a complete computation, analysis, and valuation of Weruva's economic damages. (Document No. 30, Affidavit of Carl F. Jenkins in Support of Motion to Continue Trial Date ("Jenkins Aff.") ¶¶ 1-2.) Mr. Jenkins necessarily must review and analyze the following information regarding PGI's product sales and revenue in order to provide a complete computation of Weruva's economic damages:

(1) Sales of PGI's products by product line, date, and location;

(2) Gross and net margins on PGI's different products;

(3) A list of all of the various markets/regions within which PGI sells its products, and the dates it entered into those markets/regions;

(4) PGI's internal monthly reporting of sales;

(5) PGI's audited financial statements;

(6) Distributor data regarding timing of sales, geographic location for sales, and reports reflecting trends and changes in sales data for each market/region in which PGI does business;

(7) PGI's Tax Returns; and

(8) Projections and/or forecasts for PGI sales.

(Jenkins Aff. ¶ 5).  On July 3, 2012, the Court adopted a Scheduling Order that requires the disclosure of Mr. Jenkins's written expert report by July 27, 2012 and the completion of all expert discovery by August 24, 2012.  (Document No. 37, Order re: Defendant's Motion for Entry of Scheduling Order.)

### C. PGI's refusal to disclose relevant information concerning its domestic sales of cat food products from January 1, 2010 through the present.

On June 22, 2012, Weruva served its First Request for Production of Documents to PGI. (Affidavit of Matthew J. Wayne in Support of Plaintiff's Emergency Motion to Compel Defendant's Disclosure of Financial and Sales Information and to Extend Deadline for Disclosure of Plaintiff's Financial Expert ("Wayne Aff."), Ex. A.)  Through the service of this documents request, Weruva seeks to discover relevant information concerning the domestic sale and distribution of PGI's cat food products from January 1, 2010, up through the present time. On July 16, 2012, PGI responded to Weruva's documents request and agreed to disclose certain information regarding the domestic distribution and sale of its products. (Wayne Aff., Ex. B.) The relevant document requests, and PGI's responses thereto, are as follows:

**Documents Request No. 50:**

A list of all PGI customers in the United States to whom any sale of PGI products has been made from January 1, 2010, up through and including the present time, including all documents concerning the date each sale was made.

PGI's Response:

Pets Global objects to Request No. 50 on the grounds set forth in its Relevance Objection, Vagueness Objection, Burdensome Objection and Confidentiality Objection.  Without waiving its objections, Pets Global will produce the documents sufficient to identify the purchasers of its Fussie Cat and Premium Fussie Cat products in the United States since January 1, 2010.

**Documents Request No. 51:**

A list of all PGI distributors in the United States to whom any distribution or shipment of PGI products has been made from January 1, 2010, up through and including the present time, including all documents concerning the date each distribution or shipment was made.

PGI's Response:

Pets Global objects to Request No. 51 on the grounds set forth in its Relevance Objection, Vagueness Objection, Burdensome Objection and Confidentiality Objection. Without waiving its objections, and pursuant to the Protective Order, Pets Global will produce the documents sufficient to identify the distributors of its Fussie Cat and Premium Fussie Cat products in the United States since January 1, 2010.

(Id.) Notwithstanding PGI's agreement to disclose information that would identify its customers and distributors – information that Mr. Jenkins needs in order to appropriately evaluate Weruva's damages – PGI has yet to produce a single document that identifies a domestic distributor or purchaser of its cat food products.

In addition, PGI has refused to disclose, and has not disclosed, other detailed information regarding the domestic sales of its products. The individual document requests, and PGI's responses thereto, that reveal PGI's intransigence are as follows:

**Documents Request No. 52:**

All documents concerning the sales of PGI's products in the United States by product line, date, and location from January 1, 2010, up through and including the present time.

PGI's Response:

Pets Global objects to Request No. 51 [sic] and respectfully declines to produce any documents in response thereto, on the grounds set forth in its Relevance Objection, Vagueness Objection, Burdensome Objection and Confidentiality Objection. In further response, Pets Global states that the documents being produced in response to Requests Nos. 56 and 57, infra, all of which shall be designated as "Highly Confidential" pursuant to the Protective Order, are more

than sufficient to provide Weruva with the information that is arguably relevant to the subject matters of this action.

**Documents Request No. 53:**

All internal reports of PGI's monthly sales within the United States from January 1, 2010, up through and including the present time.

PGI's Response:

Pets Global objects to Request No. 53 and respectfully declines to produce any documents in response thereto, on the grounds set forth in its Relevance Objection, Vagueness Objection, Burdensome Objection and Confidentiality Objection. In further response, Pets Global states that the documents being produced in response to Requests Nos. 56 and 57, infra, all of which shall be designated as "Highly Confidential" pursuant to the Protective Order, are more than sufficient to provide Weruva with the information that is arguably relevant to the subject matters of this action.

**Documents Request No. 54:**

All documents concerning the gross and net margins on all PGI products sold in the United States from January 1, 2010, up through and including the present time.

PGI's Response:

Pets Global objects to Request No. 54 and respectfully declines to produce any documents in response thereto, on the grounds set forth in its Relevance Objection, Vagueness Objection, Burdensome Objection and Confidentiality Objection. In further response, Pets Global states that the documents being produced in response to Requests Nos. 56 and 57, infra, all of which shall be designated as "Highly Confidential" pursuant to the Protective Order, are more than sufficient to provide Weruva with the information that is arguably relevant to the subject matters of this action.

(Id.) Notwithstanding the clear relevancy of the information Weruva sought regarding PGI's domestic cat food sales, PGI has only disclosed unaudited financial statements and tax returns that fail to even remotely describe the date, product line, and location of PGI's domestic cat food sales.

On July 23, 2012, Weruva's counsel provided PGI's counsel with a written list of areas of disagreement that exist regarding PGI's response to Weruva's request for the production of documents. (Wayne Aff., Ex. C.) On July 26, 2012, the parties' counsel participated in a telephone conference and discussed PGI's continued failure to disclose information regarding its domestic cat food sales to Weruva. (Id., ¶5.) PGI's counsel requested that Weruva's counsel provide him with a written list of the financial and sales data that Mr. Jenkins requires to formulate a complete opinion as to Weruva's damages. (Id.) The parties' counsel also agreed to a mutual two business day extension for the disclosure of written expert reports. (Id., ¶5; Ex. D.) That same day, Weruva's counsel provided PGI's counsel with a written outline of the sales information Mr. Jenkins needs in order to formulate a complete opinion as to Weruva's damages. (Id., Ex. E.)

On July 27, 2012, PGI's counsel notified Weruva's counsel that PGI was in the process of determining what additional sales and financial information it would agree to disclose as part of this litigation. (Id., Ex. F.) PGI's counsel made no representation as to what information would be disclosed, or when it would be disclosed. (Id.) In response, Weruva's counsel provided PGI's counsel with legal authority regarding the extent and form of damages that may be recovered in conjunction with a Lanham Act violation, and again requested that PGI's counsel clarify the nature, extent, and timing of any supplemental document production. (Id., Ex. G.) PGI's counsel simply reiterated that it would not make any representation as to what further sales and financial information would be produced. (Id., Ex. H.) As of the time Weruva's Motion has been filed, PGI's counsel has not confirmed what further financial and sales data PGI will

disclose in discovery, and PGI has failed to disclose information that it agreed to disclose regarding its customer and distributor data.

## II.   LEGAL STANDARD

Fed. R. Civ. P. 26 provides that parties "may obtain discovery regarding nonprivileged matter that is relevant to any party's claim or defense," so long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Fed. R. Civ. P. 26's relevancy standard is not synonymous with the traditional relevancy standard used to determine the admissibility of evidence at trial. See Gagne v. Reddy, 104 F.R.D. 454, 456 (D. Mass. 1984) (citations omitted). Instead, "relevancy is broadly construed at the discovery stage of litigation and a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action." Id. (citations omitted; emphasis in original); see also United States v. Mass. Indus. Fin. Agency, 162 F.R.D. 410, 414 (D. Mass. 1995) ("[R]elevancy must be broadly construed at the discovery stage such that information is discoverable if there is any probability it might be relevant to the subject matter of the action."). It is therefore well-settled that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Hickman v. Taylor, 329 U.S. 495, 507 (1947).

## III.   ARGUMENT

### A. The Court should compel PGI to fully respond to Weruva's documents requests and disclose its financial and sales data to Weruva's counsel and financial expert because this information is inexorably linked to Weruva's claim that PGI violated the Lanham Act.

As set forth above, Weruva seeks to discover financial information and sales data related to domestic cat food sales PGI made, and profits it earned from those sales, during the time that

PGI deceptively marketed its products in violation of the Lanham Act. This information is unquestionably linked to Weruva's claim for damages it seeks to recover through this lawsuit. Indeed, the law is crystal clear that a plaintiff who successfully proves a Lanham Act violation "shall be entitled . . . to recover . . . **defendant's profits** . . . [and] **any damages sustained by the plaintiff** . . ." 15 U.S.C. § 1117(a) (emphasis supplied). Indeed, "[t]he remedial provisions of the Lanham Act authorize four forms of relief: an accounting of the defendant's profits, any damages sustained by the plaintiff, the costs of the action, . . . and injunctive relief under §1116(a)." Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 78 (1st Cir. Mass. 2008).

A primary measure of damages in a Lanham Act action is the disgorgement of the defendant's profits. See Murray v. Shaw Indus., 990 F. Supp. 46, 47 (D. Mass. 1997) (Young, J.) ("[T]he Court's award of statutory damages, although crafted in part to punish and deter the defendant, was necessarily premised on the disgorgement of [the defendant]'s profits.") (alteration to original). As part of his written expert report, Mr. Jenkins will opine on the causal link that exists between PGI's unlawful marketing scheme and a decrease in Weruva's marketing share. See HipSaver Co., Inc. v. J.T. Posey Co., 497 F. Supp. 2d 96, 105 (D. Mass. 2007) ("Without an expert opinion that this growth rate differential was the result of the [defendant's false advertising], the growth rates alone cannot support a reasonable inference of causation.") (alteration to original) (citations omitted). A plaintiff in a Lanham Act case, such as Weruva, must therefore be permitted to analyze a defendant's profits and sales for purposes of assessing damages. See e.g., Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 37 (1st Cir. 2002) ("In assessing profits the plaintiff shall be required to prove defendant's sales only"); Champion Prods. v. Asdourian, 1997 U.S. App. LEXIS 35503 (1st Cir. 1997) (citing

Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 5 (1st Cir. 1993) ("[T]he court may assess damages based on an unjust enrichment or deterrence theory.")); Finnsugar Bioproducts v. Amalgamated Sugar Co., 2002 WL 31207213 (N.D. Ill. Oct. 2, 2002) (granting plaintiff's motion to compel defendant in Lanham Act action to provide information regarding its product sales).

Because a basic measure of damages in a Lanham Act case involves a defendant's profits, it is axiomatic that Weruva is entitled to discover PGI's financial and sales information. Accordingly, Weruva served narrowly tailored written discovery requests that seek to discover the following information concerning PGI's domestic cat food sales that have taken place from January 1, 2010 through the present:

(1) Customers to whom any sales of PGI products has been made (Document Request No. 50);

(2) Distributors to whom any distribution or shipment of PGI products has been made (Document Request No. 51);

(3) The sales of PGI products by product line, date, and location (Document Request No. 52);

(4) Internal reports of PGI's monthly sales (Document Request No. 53); and

(5) The gross and net margins on the sales of PGI products (Document Request No. 54).

(Wayne Aff., Ex. A.)  It is plainly obvious that Weruva's counsel and financial expert are entitled to the disclosure of information concerning sales of Fussie Cat products that have been


made in the United States during this limited timeframe.  Nevertheless, PGI brazenly refuses to provide Weruva with any of the underlying information regarding these sales.

PGI initially agreed to produce documents that identify customer and distributor information related to domestic sales of PGI cat food products, presumably for the same reason that Weruva seeks to discover it – because it is highly relevant to Weruva's claim for damages. Nevertheless, PGI has yet to produce a <u>single document</u> that contains information about its customers or distributors, even where the Court has put in place a Protective Order (at PGI's request) governing the disclosure of sensitive information.  PGI has likewise refused to divulge any material information concerning the domestic sales of its cat food products.  Instead, PGI has only disclosed summaries of financial and sales information (its tax returns and unaudited financial statements) that provide Weruva's counsel and its financial expert with little to no insight as to PGI's domestic sales of its cat food products.  The Court must compel PGI's disclosure of this information because it is integral to Weruva's claim for damages and Mr. Jenkins's complete evaluation of the same.

Accordingly, Weruva respectfully requests that the Court allow its Motion and order PGI to disclose all information that is responsive to Document Request Nos. 50, 51, 52, 53, and 54 no later than three (3) business days from the date of any such order.

> **B. The Court should extend the deadline for Weruva to disclose Mr. Jenkins's written expert report to take place within five (5) business days from the date that PGI discloses its supplemental financial and sales information regarding its cat food products.**

As set forth above, Weruva is presently under an obligation to disclose Mr. Jenkins's written expert report on or before July 31, 2012.  A material component of Mr. Jenkins's opinion as to the full extent of Weruva's economic damages will be based on information regarding the

sales of PGI's Fussie Cat products. (Jenkins Aff. ¶ 5.) Accordingly, Weruva promptly and properly sought the disclosure of information related to PGI's sales so that a full and complete analysis of Weruva's damages could be presented within Mr. Jenkins's written report, and at trial. Weruva's written documents request was served on June 22, 2012 and PGI's response was received on July 16, 2012. It is abundantly clear that PGI has withheld discoverable information related to the domestic sales of its cat foot products while having explicit knowledge of the looming deadline for the disclosure of Mr. Jenkins's written expert report and the type of information that Mr. Jenkins needs to prepare a complete evaluation of Weruva's damages. These tactics only stand to unfairly prejudice Weruva, given the expedited schedule for the disclosure of trial experts.

Accordingly, Weruva respectfully requests that the Court briefly extend the deadline for Weruva's disclosure of Mr. Jenkins's written report to take place within five (5) business days following PGI's disclosure of its financial and sales information.

### C. The Court should award Weruva its reasonable attorneys' fees related to this motion practice, which is only necessary because of PGI's refusal to engage in discovery in good faith.

Fed. R. Civ. P. 37 provides that a Court should award a moving party all reasonable expenses, including attorneys' fees, incurred in relation to a motion to compel discovery. Specifically, Rule 37 sets forth:

> [i]f the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party of attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees.

Fed. R. Civ. P. 37(a)(5).  It is clear that, notwithstanding this Court's prior direction that the parties should prepare for trial in the spirit of cooperation or face an appropriate sanction, PGI has failed to participate in written discovery in good faith.  It has agreed to produce documents that it has not produced, and withheld others from production for no other purpose, it would appear, than to jeopardize Weruva's efforts to have Mr. Jenkins offer a complete and thorough analysis of Weruva's monetary damages.  Accordingly, the Court should award Weruva reasonable attorneys' fees in relation to the underlying motion practice.

## IV. CONCLUSION

For the reasons set forth above, Weruva respectfully requests that the Court **ALLOW** its Motion and:

(1) Order PGI to produce all documents that are responsive to Documents Request Nos. 50, 51, 52, 53, and 54 within three (3) business days of any such order;

(2) Briefly extend the deadline for Weruva's disclosure of Mr. Jenkins's written report to take place within five (5) business days following PGI's disclosure of its financial and sales information;

(3) Award Weruva the reasonable attorneys' fees and costs that it incurred in relation to the underlying motion practice; and

(4) Award any such further or other relief that the Court deems just and proper.

Dated: July 30, 2012

Respectfully submitted,
WERUVA INTERNATIONAL, INC.
By its attorney,

*/s/ Matthew J. Wayne*
Charles F. Rodman, BBO# 641216
rodman@rodmanlawgroup.com
Matthew J. Wayne, BBO# 674923
wayne@rodmanlawgroup.com
Rodman Law Group LLC
36 Washington Street, Suite 190
Wellesley Hills, MA 02481
(781) 237-5500 [P]
(781) 237-5550 [F]