**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WERUVA INTERNATIONAL, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>PETS GLOBAL, INC. d/b/a Fussie Cat and Premium Fussie Cat,<br><br>    Defendant. | Civil Action No. 1:12-CV-10447-WGY |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO QUASH OR MODIFY SUBPOENAS**

Defendant Pets Global, Inc. d/b/a Fussie Cat and Premium Fussie Cat ("Pets Global"), by its attorneys, Pierce Atwood LLP, respectfully submits this memorandum of law in opposition to the motion by Plaintiff, Weruva International, Inc. ("Weruva"), to quash or modify subpoenas to the accounting firms of Levine, Caufield, Martin & Goldberg P.C. and Katz, Nassi & Solomon, P.C. ("Weruva Motion"; Document No. 55).

**FACTS**

In March 2012, Weruva brought suit against Pets Global under the Lanham Act based on allegations that Pets Global engaged in deceptive and false advertising. (Document No. 1). Weruva has requested an award of damages and/or the disgorgement of Pets Global's profits earned as a result of allegedly unlawful conduct and damages based on its lost profits. *Id.*

After the commencement of discovery, Pets Global learned that Weruva and its CEO, David Forman, are intimately connected with two other closely held family businesses, Jana Brands, Inc. ("Jana Brands") and Forman Industries, both of which are owned by David

Forman's father, Steve Forman. Through documents produced by Weruva and Jana Brands, Pets Global discovered that Steve Forman, acting on behalf of Weruva, and David Forman engaged in substantial efforts designed to eliminate competition by frustrating Pets Global's entry into the human-style cat food market in the United States.[1] Pets Global has also learned that Weruva's production of financial records, which are necessary to any analysis of its damages claim, is woefully inadequate and incomplete. A motion to compel will be forthcoming.

On July 24, 2012, Pets Global served notice on Weruva of its plan to take a Fed. R. Civ. P. 30(b)(6) deposition of Levine, Caufield, Martin & Goldberg, P.C. ("LCM&G") and Katz, Nannis & Solomon, PC ("KN&S"). LCM&G and KN&S (collectively, the "Accounting Firms") are accounting firms that have provided accounting services to Weruva, Jana and Forman Industries. In pertinent part, Pets Global seeks to inquire into the relationship between Weruva, Jana Brands and Forman Industries, given Steve and David Forman's concerted efforts to eliminate competition in the human-style cat food market, as well as financial records that are necessary to evaluate and defend against Weruva's claim for damages. On August 1, 2012, the very day the depositions were to take place, Weruva filed a motion to quash or modify the subpoenas Pets Global issued to the accounting firms. (Document No. 55). Weruva's Motion seeks to quash or drastically modify the scope of Pets Global's Fed. R. Civ. P. 30(b)(6) deposition subject areas. It is also ironic given Weruva's seemingly inexhaustible appetite for Pets Global's financial data.

## ARGUMENT

The Court should deny Weruva's Motion for two reasons: (1) Weruva does not have standing to challenge a subpoena issued to a non-party; and (2) even if it did have standing –

---

[1] Pets Global recently filed a motion seeking leave to amend its answer to add a counterclaim against Weruva and a third party complaint against Jana Brands and Forman Industries based on the information Pets Global discovered. (Document No. 59).

which it does not – the scope of Pets Global's inquiry is permissible and bears directly on central issues in this case.

## I.     Weruva Does Not Have Standing To Challenge The Subpoenas.

Under Fed. R. Civ. P. 45(c)(3)(B), "the court may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." It is clear, however, that a party does not have standing to challenge a subpoena issued to a non-party. *See Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 450 (D. Mass. 2011) (Young, J.). *See also* 9A Wright, Miller, Kane & Marcus, *Federal Practice & Procedure* § 2459 (3d. ed.) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action . . . .").

Courts in the First Circuit recognize a limited exception, under which a party may have standing to quash a subpoena issued to a non-party if based on claims of privilege relating to the documents being sought. *Liberty Media*, 821 F. Supp. 2d at 450 (holding that party did not have standing to quash subpoena issued to non-party because "[t]he exception for claims of privilege does not apply here as the moving defendants have not asserted (nor could they viably assert) any claim of privilege relating to the requested information."). *See also U.S. Bank Nat. Ass'n v. James*, 264 F.R.D. 17, 18-19 (D. Me. 2010) ("[t]he general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought").

Here, Weruva does not have standing to move to quash subpoenas issued to non-parties LCM&G and KN&S for the simple reason that it has not asserted a claim of privilege relating to the documents being sought. Nor could it. There is no such thing as an accountant-client

3

privilege in Massachusetts and Weruva has not asserted that the documents requested are protected by any other viable privilege.  Therefore, Weruva's motion should fail.

In its motion to quash, Weruva cites a number of decisions from other jurisdictions purporting to recognize a more broad exception to the no-standing rule.  In these jurisdictions, a party may have standing to quash a subpoena to a non-party if the party alleges a "personal right or privilege" or "personal privacy right" in the documents sought through the subpoena.  *See* Weruva Motion at p. 8.  Weruva's efforts here are futile.

*First*, none of the decisions Weruva cites are from the First Circuit.  The controlling decision issued by this Court in *Liberty Media* only recognizes an exception to the no-standing rule based on privilege, not "personal right" or "personal privacy right."  Weruva has asserted no claims of privilege and, therefore, does not have standing to move to quash the subpoenas at issue.

*Second*, even if the First Circuit did recognize a broader exception to the no-standing rule based on claims of "personal right," Weruva has no personal right grounded in privacy to the documents requested in Pets Global's subpoenas to the accounting firms.  Not surprisingly, several of the cases Weruva cited in its motion stand in direct contradiction to its position.  *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) (holding that Defendants did not have standing to challenge subpoenas seeking "extensive . . . information about every aspect of the financial relationship between Defendants and the non-parties . . . because Defendants have not established any expectation of privacy in their business transactions with other corporations and have not made any factual showing that the records are confidential or proprietary"); *Jacobs v. Connecticut Cmty. Tech. Colleges*, 258 F.R.D. 192, 195 (D. Conn. 2009) (holding that an individual had standing to move to quash subpoenas issued to

his mental health care providers because he "clearly has a personal privacy right and privilege with respect to the information contained in his psychiatric and mental health records"). Accordingly, even if the First Circuit recognized the broader exception to the no-standing rule, which it does not, Weruva would still lack standing to challenge the subpoenas at issue because it has no expectation of privacy in its business relationship with other corporations.

**II.     Even If Weruva Does Have Standing – Which It Does Not – The Scope of Pets Global's Subpoenas is Permissible.**

Weruva does not have standing to bring its motion to quash, and the Court should deny its motion on this basis alone. If the Court finds that Weruva does have standing, however, the scope of Pets Global's subpoenas is permissible, mandating denial of Weruva's motion in any case. Weruva challenges two categories of subject areas in Pets Global's subpoenas to the accounting firms: (a) requests seeking information concerning the relationship between Weruva, Jana Brands and Forman Industries (collectively, the "<u>Forman</u> <u>Entities</u>"); and (b) requests seeking Weruva's financial information that is central to Weruva's claim for damages.

**A.     Requests Seeking Information Concerning The Relationship Among Forman Entities.**

In its motion to quash, Weruva takes issue with the following subject areas in Pets Global's subpoenas to the accounting firms:

> Any and all Communications between Forman Industries, Inc. [or Jana Brands, Inc.] on the one hand, and [accounting firm] on the other, Concerning (a) Weruva, (b) Pets Global, (c) Fussie Cat, or (d) Premium Fussie Cat.
>
> All facts Concerning any business, financial or other relationship(s) between or among Forman Industries, Inc., Jana Brands, Inc. and Weruva.

Weruva alleges that these requests are excessively overbroad, ask for highly confidential business information, and call for irrelevant documents.

The subject areas Pets Global requested from the accounting firms are highly relevant to this case. Both the subject areas seek to obtain information about the relationships between and among the Forman Entities. Pets Global recently sought leave to file an amended answer to assert a counterclaim against Weruva and third party complaint against Jana Brands and Forman Industries based on those entities' common ownership and scheme to frustrate Pets Global's entry into the human-style cat food market. Discovering the relationship between the three Forman Entities is essential to Pets Global's counterclaim and third party complaint.

Similarly, Weruva's assertion that the subpoenas should be quashed because they seek confidential business information is unfounded in the rules and in law. The subject areas do not seek privileged information, Fed. R. Civ. P. 45(c)(3)(A)(iii), or the disclosure of a trade secret or other confidential research, development or commercial information, *id.* at 45(c)(3)(B)(i). Nor has Weruva alleged that the subject areas would subject it or the accounting firms to undue burden, *id.* at 45(c)(3)(A)(iv). There is simply no basis for Weruva's argument that Pets Global's subpoena should be quashed because it asks for "highly confidential business and financial information." Weruva Motion, at p. 9. Unfortunately for Weruva, the rules and the law do not contemplate such a basis to quash a subpoena.[2] If Weruva is concerned about the information that the accounting firms may produce, it could seek a confidentiality order or pursue another means of restricting Pets Global's use of the highly relevant information once it is produced. Better yet, if Weruva does not want Pets Global looking into its business, it is free to dismiss the lawsuit it filed.

---

[2] Rather the "confidential commercial information" stated in Fed. R. Civ. P. 45(c)(3)(B)(i) pertains to that of a proprietary or commercially valuable nature (i.e. information regarding a major corporate event that would have a material effect on the corporation's stock price). Fed. R. Civ. P. 45(c)(3)(B)(i) does not provide a basis for Weruva's argument based on the notion that it does not want Pets Global knowing the details of its relationship with two related family businesses.

{W3264376.1}

B.     **Requests Seeking Weruva's Financial Information.**

In its motion to quash, Weruva also takes issue with the following subject areas in Pets Global's subpoenas to the accounting firms:

> The financial condition of financial results of operation at any time of Weruva.

> Sales by Weruva of moist cat food products and gross and net profits resulting therefrom.

According to Weruva, the Court should quash these subject areas because, in its estimation, it has already produced enough financial information. Weruva also argues that the temporal scope of the request is unreasonable.

Again, Weruva has not couched its arguments in any specific rule or legal principle. For example, Weruva does not allege that the requests subject a person to undue burden or would require the disclosure of a trade secret. Likewise, there is no doubt but that the information sought is relevant. As an element of its damages, Weruva will attempt to prove that Pets Global's conduct caused it to lose profits it otherwise would have realized. Pets Global is entitled to Weruva's financial information in anticipation of its lost profits claim. It is of no moment that Weruva has already produced some (but woefully inadequate) financial information. Likewise, in order to evaluate Weruva's lost profits claim, it is essential to understand Weruva's growth since entering the market in 2006. Seeking financial information for four years before the allegedly offending conduct occurred is entirely reasonable in a case like this to enable Pets Global to establish a baseline of sales and growth prior to the allegedly offending conduct.

...

## **CONCLUSION**

For the foregoing reasons, the Court should deny Weruva's motion to quash in its entirety.

Dated: August 9, 2012

                        Respectfully submitted,

                        PETS GLOBAL, INC.

                        By its attorneys,

                        /s/ Larry L. Varn
                        Larry L. Varn (BBO #508130)
                        *lvarn@pierceatwood.com*
                        Jeffrey E. Francis (BBO #639944)
                        *jfrancis@pierceatwood.com*
                        Kyle N. Kirby (BBO #679895)
                        *kkirby@pierceatwood.com*
                        PIERCE ATWOOD LLP
                        100 Summer Street, Suite 2250
                        Boston, MA  02110
                        Telephone: (617) 488-8100
                        Facsimile:  (617) 824-2020

## CERTIFICATE OF SERVICE

  I hereby certify that on the 9th day of August, 2012, I electronically filed the above-document and that such document is available for viewing and downloading from the court's ECF system.  Service on counsel of record has been effectuated by electronic means.

                      */s/ Larry L. Varn*