UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WERUVA INTERNATIONAL, INC., )<br>      Plaintiff )<br> )<br>vs. )<br> )<br>PETS GLOBAL, INC. d/b/a Fussie Cat )<br>and Premium Fussie Cat, )<br>      Defendants ) | Case No. 1:12-CV-10447 (WGY) |

**MEMORANDUM OF LAW OF PLAINTIFF WERUVA INTERNATIONAL, INC. IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

Plaintiff, Weruva International, Inc. ("Weruva"), hereby files this memorandum in support of its motion for partial summary judgment as to liability for false advertising under 15 U.S.C. § 1125(a) (the "Lanham Act"), against defendant, Pets Global, Inc. d/b/a Fussie Cat and Premium Fussie Cat ("PGI"), a direct competitor of Weruva. This motion is limited to two specific representations made by PGI on its labels – namely that PGI's cat food is a product of the United States and that PGI's cat food prevents urinary tract infections, or supports urinary tract health, in cats. For purposes of this motion, Weruva does not rely on or seek judgment as to statements made by PGI with respect to any other representations made on its labels or on any other marketing documents.

Weruva, founded in 2006, is a pioneer in the "human style" pet food market. PGI is a direct competitor of Weruva, which markets itself as such by claiming that its products are the same as Weruva, only less expensive.[1] But, unlike Weruva, which played by the rules and

---

[1] PGI admitted in Defendant's Answer that it is a direct competitor of Weruva. See Defendant's Answer, ¶ 9 (Document No. 21). PGI also stipulated in the parties Joint Pretrial Memorandum that "Weruva and [PGI] are pet food manufacturers and **direct competitors** that compete with one another and sell similar pet food products." (Emphasis added) See Joint Pretrial Memorandum, p. 17, Stipulated Fact No. 1 (Document No. 47).

1

cultivated its business through lawful means, PGI took unlawful shortcuts in order to establish its brand.  Weruva now seeks partial summary judgment as to liability on its claims against PGI, whose conduct violated the Lanham Act by: (i) falsely advertising that its products are made in the United States when, in fact, they are manufactured in Thailand; and (ii) falsely marketing its cat food as preventing urinary tract infections without any scientific support whatsoever.  In addition, Weruva seeks summary judgment as to PGI's affirmative defenses because, in its answers to interrogatories, PGI fails to identify one fact in their support.  Partial summary judgment is appropriate because no genuine dispute exists as to the material facts concerning these issues.

**I.      UNDISPUTED FACTS**

This is an action for false claims and advertising seeking injunctive and monetary relief under Subsection 43(a) of the Lanham Act.

Founded in 2006, Weruva has quickly pioneered a unique and novel category to the pet food industry which Weruva describes as "human style" pet food products.  See Separate Statement in Support of Plaintiff's Motion for Partial Summary Judgment on Liability ("Separate Statement"), ¶¶ 1-2.  This unique, ultra-niche "human style" of food is limited to very few brands and manufacturers in an industry that otherwise contains hundreds of competing brands.  Id. at ¶ 4.  Weruva sells its brand of pet food to independently-owned, "mom and pop"-type pet supply stores throughout the United States and Canada.  Id. at ¶ 3.  These stores typically carry higher quality items that are not available in big box channels, and the owners and managers of these stores love to know the extreme details about the products that they carry.  Id. at ¶¶ 5-6. PGI is a direct competitor of Weruva in the sale of natural "human style" cat food products and their products are often located next to each other on store shelves in the independent pet stores that

sell their products.  Id. at ¶¶ 15-16.

In the aftermath of the massive pet food recall in 2007 that left thousands of pets dead, discerning pet owners began to search for the highest quality food items that came from factories with superior quality control.  Id. at ¶ 11.  The pet food recall, which impacted hundreds of brands, was linked to an ingredient that was sourced in China.  Id. at ¶ 8.  After the recall, ingredients from China were staunchly frowned upon, and imported products were reviewed by independent pet stores with scrutiny.  Id. at ¶ 9.  Many stores vowed only to carry products bearing "Made in the USA" or similar designations of domestic production on their labels.  Id. at ¶ 9.  As pet owners have become more and more discerning about pet food alternatives, quality control and quality of ingredients have become paramount.  Id. at ¶ 10.  Although China took the brunt of the scrutiny, other parts of Asia were equated to it, including Thailand, where both Weruva and PGI produce their products.  Id. at ¶¶ 11, 17.

Given that Weruva launched shortly before the pet food recall and was already facing the challenges of gaining distribution, the designation "Product of Thailand" on Weruva's label created an added burden.  Id. at ¶ 12.  As a result, Weruva went to great lengths to educate distributors, stores, and customers about the safety procedures in its facilities in Thailand.  Id. at ¶ 13.

PGI, on the other hand, went a different route.  PGI falsely designated the geographic origin of its Fussie Cat products as the United States by placing labels on its cans that read "PRODUCT OF USA," even though they are actually manufactured in Thailand at the same third party facility used by Weruva.  Id. at ¶¶ 17-21.  PGI falsely identified the geographic origin of its cat food in a transparent attempt to circumvent the biases against pet food produced in Asia and to unfairly compete against Weruva, which always remained truthful in designating the

geographic origin of its products on its cans. PGI acknowledges that it shipped at least 700,000 cans of cat food falsely labeled as "PRODUCT OF USA" to the United States. Id. at ¶ 22.

In addition to the false claim that its cat food is a product of the United States, many of PGI's cans of cat food claim to prevent urinary tract infections ("UTIs"). Id. at ¶¶ 23-24. For example, PGI's cans of CHICKEN WITH VEGETABLES & BROWN RICE claim to "Prevent Urinary Tract Infection." Id. at ¶ 24. The claim that PGI's cat food prevents UTIs is untrue because a complete and balanced diet that safely and consistently prevents UTIs does not exist. Id. at ¶ 29. Statements to the effect that any diet could prevent bacterial, fungal, or viral UTIs are baseless. Id. at ¶ 30. In fact, PGI's founder and CEO admits that PGI's cat food does <u>not</u> actually prevent UTIs. Id. at 26-28.

Tangentially, the cans of CHICKEN WITH VEGETABLES *in Gravy* claim to "Support Urinary Tract Health." Id. at ¶ 31. The claim that PGI's cat food supports urinary tract health is misleading and deceptive. Id. at ¶ 32. These baseless claims allowed PGI to unfairly compete with Weruva in an ultra-niche market. PGI acknowledges that it has conducted no scientific testing to establish its claims about preventing UTIs or supporting urinary tract health. Id. at ¶¶ 28-30. Moreover, Dr. Carl Osborne, the preeminent authority on urinary tract infections, has concluded that PGI's claims are patently false. Id. at ¶¶29-30, 32-36.

Finally, PGI has no facts to support any of its affirmative defenses. Id. at ¶ 40.

## II.   ARGUMENT

### A.   The Standard for Summary Judgment

Summary judgment should be granted where the evidence establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party may move for partial summary judgment on the issue of

4

liability for some of the counts in a complaint. See, e.g., Apple Corps. Ltd. v. Button Master, P.C.P., Inc. 47 U.S.P.Q2d 1236, 1998 WL 126935 (E.D. Pa. 1998).

Summary judgment is appropriate in cases involving false advertising claims under the Lanham Act. See R.J. Toomey Company v. Richard J. Toomey, Jr., 683 F.Supp. 873 (D. Mass. 1988) (granting partial summary judgment where defendant's use of a mark in interstate commerce was likely to cause confusion or deceive purchasers concerning the source of the goods); see, e.g., Nester's Map & Guide Corp. v. Hagstrom Map Co., Inc., 760 F.Supp. 36 (E.D.N.Y. 1991) (granting counterclaim plaintiff's motion for summary judgment where counterclaim defendant made literal and explicit false claim on its taxi driver's guide); Janda v. Riley-Meggs Indus., Inc., 764 F.Supp. 1223, 1228-29 (E.D. Mich. 1991) (granting summary judgment in favor of plaintiff where defendant's advertising flyer was misleading and actually deceptive as a matter of law).

A moving party is entitled to summary judgment "if the nonmoving party does not adduce enough evidence to permit a reasonable trier of fact to find for the nonmoving party on any element essential to its claim." Milton v. Van Dorn Co., 961 F.2d 965, 969 (1st Cir. 1992). The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party satisfies their initial burden, the burden then shifts to the nonmovant, who cannot rely on bare allegations but must specify facts showing that a genuine controversy is presented for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 242, 248-49 (1986).

A genuine controversy is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st

Cir. 1990). The non-moving party may not merely rely on conclusory allegations, improbable inferences, or unsupported speculation to defeat summary judgment. See Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Byrd v. Ronayne, 61 F.3d 1026, 1030 (1st Cir. 1995). The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).

Moreover, any *material* factual dispute must have the potential to "affect the outcome of the suit under the governing law." Anderson, 477 U.S. 242, 248. Therefore, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id., at 247-248 (emphasis in original). Consequently, "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000) (internal quotations and citations omitted); See, e.g., Baylis v. Red Lion Group, Inc., No. 04-1462, 2005 U.S. Dist. LEXIS 31773, at *5 (D. Del. Dec. 7, 2005) ("non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts").

Here, Weruva is entitled to partial summary judgment because PGI cannot set forth a single issue of material fact regarding: (1) its false statements on its labels that its cat food is a product of the United States; (2) its false statements on its labels that its cat food prevents UTIs or can be used for the prevention of UTIs; (3) its failure to identify a single fact that exists to support any of its affirmative defenses.

### B. Weruva Is Entitled To Summary Judgment As To Liability Because PGI's Claims That Its Cat Food Is A "Product Of USA" And Prevents Urinary Tract Infections Are Literally False.

PGI is liable to Weruva because PGI falsely claims on its labels that its cat food is a "PRODUCT OF USA" and that it prevents, or can be used in the prevention of, UTIs. Both claims are literally false and are actionable under the Lanham Act.

Subsection 43(a) of the Lanham Act reads in pertinent part:

> **Any person who**, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, **misrepresents the nature, characteristics, qualities, or geographic origin** of his or her . . . goods . . . **shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.**

(Emphasis added). 15 U.S.C. § 1125(a)(1). To prove a claim under the Lanham Act, Weruva must demonstrate that: (1) the defendant made a false or misleading description or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310-311 (1st Cir. 2002) citing Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 33 n.6 (1st Cir. 2000).

No material issues of fact exists concerning whether: (1) PGI has made literally false

statements of fact on their product packaging for its cat food; (2) the deception created by the false statements is material in that it is likely to influence purchasing decisions; (3) there is a presumption that the false statements have a tendency to deceive a substantial segment of its audience; and (4) the advertised goods traveled in interstate commerce.

### 1.    PGI has made literally false statements on its labels about its products.

There is no question that PGI has made explicit, unambiguous, and literally false statements on its cat food cans with respect to its cat food products.  Under Subsection 43(a), liability arises if the commercial statement is either "literally false or implicitly false – that is, the advertisement is true or ambiguous yet misleading."  Cashmere & Camel Hair, 284 F.3d at 311.

In analyzing whether a product claim is literally false, a court must determine, first, the claim conveyed by the advertisement and, second, whether that claim is false.  See Clorox, 228 F.3d at 34.  "A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'"  See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 586 (3d Cir. 2002) citing Clorox, 228 F.3d at 35.  "[I]f a defendant's claim is untrue, it must be deemed literally false" regardless of the advertisement's impact on the buying public.  Castrol, Inc. v. Pennzoil Co., 987 F.2d 939, 943-044 (3rd Cir. 1993).  A literally false advertisement is one that includes a "specific and measurable claim, capable of being proved false, reasonably interpreted as a statement of objective fact."  See Pizza Hut v. Papa John's Int'l, 227 F.3d 489, 496 (5th Cir. 2000) quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999); See also FTC v. Direct Mktg. Concepts, Inc., 624 F.3d 1 (1st Cir. 2010) ("specific and

measurable" claims that may be literally true or false are not puffery, and may be the subject of deceptive advertising claims).

Weruva is entitled to summary judgment as to liability based upon these two literally false claims made by PGI on its cat food cans:

- Fussie Cat designated the origin on its cat food as the United States of America, by stating on its cans that it is a "PRODUCT OF USA"; and

- Fussie Cat claimed, in several iterations of packaging and advertisements, that its cat food "prevent[s] urinary tract infection" and can be used for "prevention of urinary tract infections."

*The Literal Falsity of the "PRODUCT OF USA" Claim*

The falsity of this claim is not in dispute. In its answer to Weruva's complaint, PGI admits that it distributed cans of cat food into the United States with labels that state "PRODUCT OF USA" when PGI's cat food products are actually manufactured in the same plant as Weruva's products in Thailand. PGI ridiculously, and unconvincingly, attempts to justify its false representation by stating that although it distributed cat food cans in the United States with the label PRODUCT OF USA, "when questions were raised concerning that statement, [PGI] replied that it was (and is) a United States company and that the product itself was made in Thailand."

However, disregarding PGI's silly justification, this claim is objectively and literally false, and falls directly within the ambit of Subsection 43(a) because it misrepresents the geographic origin of the cat food, which is prohibited by the Lanham Act. See Subsection 43(a) of the Lanham Act ("Any person who . . . misrepresents the . . . geographic origin of his or her . . . goods . . . shall be liable in a civil action[.]"); see also Edmark Indus. SDN BHD v. South Asia Int'l (H.K.) Ltd., 89 F.Supp.2d 840, 845-846 (E.D. Tex. 2000) (granting partial summary judgment as to Lanham Act claim where defendant falsely claimed that vegetable slicer called

9

"Super Slicer" was made from German steel when in fact it was made from Japanese steel).

*The Literal Falsity of the Claims Related to the Prevention of Urinary Tract Infection*

PGI claims on its cat food labels that its cat food prevents UTIs.  This claim is also literally false.  As discussed in the Expert Report of Dr. Carl Osborne, DVM, PhD, this claim is untrue because a complete and balanced diet that safely and consistently prevents UTIs does not exist and statements that any diet could prevent bacterial, fungal, or viral UTIs are baseless.  Such claims would have to be verified by appropriate double-blind randomized clinical trials, and no such studies are referenced in the English literature.  See, e.g., Novartis 290 F.3d at 586 (3d Cir. 2002) (affirming district court finding the product name "Mylanta Night Time Strength" false by necessary implication where the company making the claim presented no evidence to show that the antacid was formulated specifically for night use); see also Warner-Lambert Co. v. BreathAsure, Inc., 204 F.3d 87, 92 (3d Cir. 2000) (finding the trade name BreathAsure false by necessary implication because the products so named were ineffective in reducing bad breath).  Because no diet or study exists that confirms PGI's claim that its cat food prevents UTIs, this claim is literally false.  PGI's President, Daniel Hereford, and its Founder and CEO, Raymond Lee, both testified that PGI engaged in no scientific testing to verify its claims.

PGI also claims on its cans that its cat food "Support[s] Urinary Tract Health."  Again, as discussed in Dr. Osborne's report, the claim that PGI's cat food supports urinary tract health is misleading and deceptive because all foods manufactured for purchase by the public should be safe and effective.  Following this line of logic, all diets should support total body health.  For this reason, this claim is literally false.

**2.     Weruva is entitled to a presumption that PGI's literally false claims actually deceived a substantial portion of the intended audience.**

Literally false statements eliminate the need for a plaintiff to introduce evidence of the

impact the statement had on consumers. A presumption of consumer deception is applied to all literal falsity claims, irrespective of the type of relief sought. See Cashmere & Camel Hair, 284 F.3d. at 314-315 ("when a plaintiff demonstrates that a defendant has made a material misrepresentation that is literally false, there is no need to burden the plaintiff with the onerous task of demonstrating how consumers perceived the advertising . . . [t]o presume as much requires neither a leap of faith nor the creation of any new legal principle"). If a challenged advertisement is literally false, liability under the Lanham Act is established. See Clorox, 228 F.3d at 34. If the advertisement is literally false, a violation can be established without evidence of consumer reaction or deception. Id.; see also Balance Dynamics Corp. v. Schmitt Indus., 204 F.3d 683, 693 (6th Cir. 2000) (when a statement is literally false, "a plaintiff need not demonstrate actual consumer deception in order to obtain relief"); BreathAsure, 204 F.3d at 96 (injury and standing is established as a matter of law upon proof of literal falsity); PBX Enterprises, Inc. v. Audiofidelity Enterprises, Inc., 818 F.3d 266 (2nd Cir. 1987) (plaintiff not required to provide evidence of actual consumer confusion by resort to witness testimony, consumer surveys, or other such evidence in order to establish entitlement to damages under the Lanham Act). In this matter, because both disputed claims are literally false, Weruva is entitled to a presumption of consumer deception.

Assuming *arguendo* that this Court determines that the claims made by PGI are not literally false, PGI has engaged Keegan & Company LLC to assess the impact on consumers of the is a "Product of USA" and "Prevents urinary tract infections" statements used by PGI on its canned cat food labels for its Fussie Cat brand. See Rodman Aff., Ex. B, Expert Report of Dr. Eli Seggev. The study was headed by Dr. Eli Seggev, M.B.A., Ph.D. Id. Based on the results of the study, Dr. Seggev concluded with a reasonable degree of scientific certitude that the

misleading claims made by PGI "have had a material impact in the marketplace because the claims are influential factors in consumers' purchasing behavior." See Separate Statement, ¶ 36. Dr. Seggev found that 92 percent of consumers who shop in "mom and pop" pet stores overwhelmingly favored a brand that purports to be made in this county, and that 75 percent of those consumers overwhelmingly favored a brand that purports to "Prevent urinary tract infections." Id. at ¶ 37-38. Based on these results, it must be concluded that PGI's false statements on its product labels had an impact on the buying decisions of consumers.

### 3. PGI's misrepresentations are material, in that they are likely to influence the purchasing decisions of consumers.

The misrepresentations made by PGI on its product packaging are material because the misrepresentations speak directly of the quality or characteristic of PGI's product. "One method of establishing materiality involves showing that the false or misleading statement relates to an 'inherent quality or characteristic' of the product." See Camel Hair, 284 F.3d at 311-312 citing Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2nd Cir. 1997). False claims made on product packaging are actionable under the Lanham Act. See., e.g., BreathAsure, 204 F.3d at 88, 97; Playskool, Inc v. Product Develop. Group, Inc., 699 F.Supp. 1056 (E.D.N.Y. 1988) (false statement that defendant's product "[a]ttaches to Playskool Pipeworks" directly on defendant's product packaging constituted false advertising); Mantae America, Inc. v. Drybranch, Inc., 1991 WL 210956 (S.D.N.Y. Oct. 9, 1991) (name of defendant's game product printed on product's packaging constituted false advertising).

With respect to the "PRODUCT OF USA" claim, establishing materiality because the label's misrepresentation speaks directly about the quality or characteristic of the product is quite easy. As discussed earlier, in the aftermath of the pet food recall in 2007 (which left thousands of pets dead), discerning pet owners searched for higher quality food items that came from factories

with superior quality control. Even though the recall was linked to an ingredient sourced in China, other Asian countries, including Thailand, were equated to China and many stores vowed only to carry products bearing "Made in the USA" on their labels, the presumption being that products made in the United States are of better quality or have better quality controls than products made elsewhere.

When Fussie Cat products entered the market, PGI knew about this bias, and, to hide that its products actually came from Thailand, and avoid the bias and unfairly compete with Weruva, PGI designated on its labels that its cat food was a "PRODUCT OF USA," trumpeting a characteristic that is completely false, yet differentiated it from the rest of the market and harming business rivals like Weruva who chose to play by the rules and designate their cat food's true country of origin on their labels.

PGI's literally false claims that its cat food prevents UTIs and supports urinary tract health are also material because PGI's deceptive misrepresentations relate directly to what consumers would perceive to be an inherent quality of the cat food. Moreover, PGI prominently announced on its cat food cans that its cat food "Prevents Urinary Tract Infection" and other similarly baseless statements. Thus, PGI's misrepresentation of the medical benefits of its cat food is material because it relates to a perceived quality of the product that helps define and differentiate its product. Further, it can be inferred from PGI's aggressive marketing strategy highlighting the ability of its cat food to prevent UTIs that PGI itself believed that representing its cat food as having this quality – even if it did not – was important and material to consumers.

However, PGI's claims concerning its medical benefits have no scientific support and are made with the specific intent to mislead consumers and harm business rivals. See Osborne Report. For these reasons, this Court should determine that PGI's misrepresentations are

material.

### 4. PGI's cat foods travel in interstate commerce.

The Lanham Act defines "commerce" as "all commerce which may be lawfully regulated by Congress. 15 U.S.C. § 1127. Products travel in interstate commerce if they are distributed to, or sold in, more than one state. Id. PGI's goods are sold in Massachusetts and elsewhere, including Colorado and New York, therefore they travel in interstate commerce. See Separate Statement, ¶ 39.

### C. WERUVA IS ENTITLED TO SUMMARY JUDGMENT ON PGI'S AFFIRMATIVE DEFENSES.

Finally, Weruva is entitled to summary judgment on all of PGI's affirmative defenses because, when questioned through interrogatories, PGI failed to identify any facts in support of such defenses. Id. at ¶ 40.

## III. CONCLUSION

Because PGI's claims that its cat food is a "Product of USA" when it is not and prevents UTIs and supports urinary tract health when such claims are baseless, Weruva has established liability under the Lanham Act. Accordingly, the Court should (1) grant Weruva's motion for partial summary judgment as to liability and reserve the issue of monetary damages for hearing, (2) grant Weruva's motion for summary judgment as to PGI's affirmative defenses, and (3) issue an order to recall all cat food cans with labels containing the literally false claims identified in this motion.

///

///

Dated: August 17, 2012                              WERUVA INTERNATIONAL, INC.,
                                                    By its attorneys,

                                                    _____/s/ Michael v. Parras, Jr._____
                                                    Charles F. Rodman, BBO# 641216
                                                    rodman@rodmanlawgroup.com
                                                    Michael V. Parras, Jr., BBO# 661298
                                                    parras@rodmanlawgroup.com
                                                    Rodman Law Group LLC
                                                    36 Washington Street, Suite 190
                                                    Wellesley Hills, MA 02481
                                                    (781) 237-5500 [P]
                                                    (781) 237-5550 [F]

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Memorandum of Law of Plaintiff Weruva International, Inc. in Support of Plaintiff's Motion for Partial Summary Judgment was served upon the attorney of record for all parties via the Court's electronic filing system on August 17, 2012.

                                                    _____/s/ Michael V. Parras, Jr._____
                                                    Michael V. Parras, Jr.